IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2006 Session

# SMITH MECHANICAL CONTRACTORS, INC. v. PREMIER HOTEL DEVELOPMENT GROUP, ET AL.

**Appeal from the Chancery Court for Washington County**
**Nos. 33710, 34123, and 34128     G. Richard Johnson, Chancellor**

---

**No. E2004-03016-COA-R3-CV - FILED JULY 12, 2006**

---

This appeal involves the construction of a hotel in Johnson City, Tennessee. During construction, the general contractor, Barker Building Company, Inc., ("Barker Building") agreed to subordinate its lien rights to a deed of trust to be filed by First Tennessee Bank (the "Bank") related to the Bank's loaning of funds which allegedly were represented to Barker Building as being sufficient to complete construction of the hotel. In reliance on the alleged representation and in order to protect its subcontractors, Barker Building, before entering into the Subordination Agreement, also obtained a Performance Bond to assure that its subcontractors would be paid. Barker Building obtained the Performance Bond from Travelers Casualty & Surety Company of America ("Travelers"). Several lawsuits were filed and the hotel's owner filed for bankruptcy protection. One of the lawsuits filed was a suit for injunctive relief filed by the Appellants in this appeal, Barker Building and Travelers, against the Appellee in this appeal, the Bank, seeking injunctive relief for various reasons after the Bank filed the Performance Bond with the Register of Deed's Office in order to bond-off subcontractors' claims. The lawsuit seeking injunctive relief was resolved in favor of the Bank by a judgment on the merits which became final several years ago. The lawsuit now on appeal involves various other claims by Barker Building and Travelers against the Bank challenging the validity of the Subordination Agreement and Performance Bond. The Trial Court ruled all claims by Barker Building and Travelers against the Bank at issue in the lawsuit now on appeal were barred by the *res judicata* effects of their previously completed lawsuit against the Bank seeking injunctive relief. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, JJ., joined.

William T. Alt, Chattanooga, Tennessee, for the Appellants Barker Building Company, Inc., and Travelers Casualty & Surety Company of America.


P. Edward Pratt, Knoxville, Tennessee, for the Appellees First Tennessee Bank National Association and K. Newton Raff, Trustee.


## OPINION

### Background

This lawsuit involves the building of the Carnegie Hotel (the "Hotel") in Johnson City, Tennessee. The Hotel was owned and built by Premier Hotel Development Group and Premier Investment Group ("Premier"). The general contractor was Barker Building. The mechanical subcontractor utilized by Barker Building was Smith Mechanical Subcontractors, Inc. ("Smith Mechanical"). The land on which the hotel was built was owned by the City of Johnson City ("Johnson City").

One of Premier's principals was Sam Easley ("Easley"). Easley initially utilized a personal line of credit with the Bank to fund a portion of the construction. Easley's personal line of credit was not secured by the Hotel property. As construction proceeded, Easley sought additional construction funding from the Bank. Before the Bank would loan any funds for further construction of the Hotel, the Bank insisted that Barker Building would have to execute a Subordination Agreement subordinating its lien rights to a deed of trust to be filed by the Bank once it loaned the money.

Barker Building's President is Robert Feathers ("Feathers"). When Feathers was approached about entering into a Subordination Agreement, he understood the agreement would subordinate Barker Building's lien rights to the Bank's deed of trust. Feathers, however, was uncertain the effect such an agreement would have on the lien rights of the various subcontractors. Due to this uncertainty and because he wanted to ensure that the subcontractors were paid, Barker Building obtained a $4 million Performance Bond to cover any potential claims of the subcontractors before it executed the Subordination Agreement. The Performance Bond was issued by Travelers.

Another relevant event is how the closing for the Subordination Agreement happened. The attorney who drafted the pertinent documents and otherwise handled the closing was Cynthia Kessler from the law firm of Hunter, Smith & Davis, L.L.P. ("H, S & D"). Feathers was familiar with H, S & D because that firm had represented Barker Building and/or Feathers. H, S & D also had done legal work for the Bank and Premier. According to Feathers' affidavit, when he was contacted by attorney Kessler regarding the closing, Feathers was surprised that law firm was handling the closing as they represented the various parties on other matters. Feathers stated that Kessler told him that H, S & D had been retained because of the relationship it had with all three

-2-

parties and with that law firm as the closing agent, the loan should close quickly. In his affidavit, Feathers stated that because H, S & D had represented him and/or Barker Building and because that firm was handling the closing, he believed that "Ms. Kessler's interests were my interests and that she would not allow Barker Building to be harmed in the closing." According to Feathers, Kessler assured him that there was plenty of money available from the loan proceeds to pay for the completion of the Hotel. Feathers claims that in reliance on this assurance, he obtained the Performance Bond and then executed the Subordination Agreement which subordinated Barker Building's lien rights to the Bank's deed of trust.

This lawsuit began with the filing of a complaint by subcontractor Smith Mechanical on August 30, 2000. Smith Mechanical sued Premier, Barker Building, the Bank, K. Newton Raff[1], and Johnson City. Smith Mechanical claimed it was owed $979,282.71 for work performed on the Hotel. Smith Mechanical essentially sought to enforce a mechanics and materialmen's lien on the property. In the alternative, Smith Mechanical sought $979,282.71 based on the theory of unjust enrichment. Smith Mechanical sued the various defendants because each had an interest in the property, but the crux of its claims were against the general contractor, Barker Building, and the owner, Premier.

Barker Building also was owed money by Premier. Even though Barker Building had entered into the Subordination Agreement, it took steps to attempt to perfect a mechanics and materialmen's lien against the property in the amount of $3.6 million.[2] Barker Building needed to perfect its lien because it intended to claim the Subordination Agreement was invalid because it was procured by fraud. Barker Building then filed a cross-claim and a third party complaint seeking the $3.6 million it was owed, plus interest. Barker Building cross-claimed against Premier, Johnson City, and the Bank. Barker Building filed a third party complaint against the general partners of Premier, which included Premier Investment Group, Easley Family Limited Partnership, Samuel T. Easley, and Christopher Hannah.

Prior to Barker Building's filing its cross-claims and third party claims, Barker Building and Premier entered into a tentative settlement agreement. Because Smith Mechanical was negotiating its own settlement, the settlement agreement between Barker Building and Premier did not affect Smith Mechanical's claims. In any event, Barker Building agreed to settle for $2,107,000, which it claims was sufficient to pay only the subcontractors. The settlement agreement was conditioned upon the happening of two events: (1) the subcontractors (excluding Smith Mechanical) agreeing to settle for the amount set forth in the settlement agreement; and (2) Smith Mechanical reaching its own agreement to settle with Premier and then releasing its claims against Barker Building and its surety on the Performance Bond, i.e., Travelers. When Premier was unable to settle all claims with Smith Mechanical and, in turn, was unable to obtain a release for Barker Building

---

[1] Raff is the Trustee on First Tennessee Bank's Deed of Trust which secured the Hotel property. For ease of reference only, for the remainder of this Opinion we will refer to First Tennessee Bank and Raff collectively as the Bank.

[2] This amount was later reduced after Barker Building received partial payment.

and Travelers, Barker Building filed the cross-claims and third party complaint claiming, among other things, that the settlement agreement was null and void. Barker Building essentially brought claims against Premier based on breach of contract and for enforcement of a materialmen's lien. Barker Building also brought claims for intentional and/or negligent misrepresentation and/or fraud against the Bank, Premier, and Easley based on the events referenced above surrounding the closing of the Subordination Agreement.

The Bank asserted as one of its defenses that Smith Mechanical's lien was subject to being bonded off by the Performance Bond issued by Travelers. The Bank, as a third-party plaintiff, sued Travelers as a third-party defendant, seeking indemnity pursuant to the Performance Bond.

Barker Building and Travelers then filed a separate lawsuit, the second lawsuit, against the Bank and the Washington County Register of Deeds seeking injunctive relief. Barker Building and Travelers claimed that the Bank had improperly filed a "Bond for Release of Lien" which relied on Travelers' Performance Bond to release any liens. After filing the Bond for Release of Lien, the Bank intended to sell the Hotel free of any liens which it claimed would have to be paid by Travelers. Barker Building and Travelers sought an injunction ordering the allegedly improperly filed Bond for Release of Lien be removed from the official records of the Register of Deeds. Barker Building and Travelers also sought an injunction preventing the sale of the Hotel free from any liens or, if the Hotel was sold, that an order be entered requiring the money to be held in escrow "pending a full and complete hearing of the merits of the claims of the plaintiffs."

Premier filed for bankruptcy at some point. In November of 2001, the Bankruptcy Court entered an Order lifting the automatic stay "in order to allow the parties to proceed to judgment in the state court action. Enforcement of any judgment rendered against the debtors … or against the property of the estate shall remain subject to the automatic stay provisions…." Less than one month later, the Bankruptcy Court modified its Order to the extent that it specifically ordered the sale of the Hotel to go forward and ordered the Bank to advertise the sale of the property, etc. When the separate second lawsuit for injunctive relief filed by Barker Building and Travelers came up for a hearing, the parties acknowledged that the request for an injunction stopping the sale of the Hotel essentially was preempted by the Bankruptcy Court's order. Barker Building and Travelers proceeded with their request for an injunction to have the "Bond for Release of Lien" removed from the County's records. The Trial Court denied this request on the merits and dismissed the separate second lawsuit altogether, stating the requirements of Tenn. R. Civ. P. 65 had not been met. No appeal was taken from the order dismissing this separate second lawsuit.

On February 4, 2002, the Bank filed two of three dispositive motions, all three of which are at the heart of this appeal. The Bank filed: (1) a motion to dismiss Barker Building's claims based on a failure to properly perfect its materialmen's lien, to dismiss the fraud action due to that claim being moot because the lien was not properly perfected, and to dismiss the claims based on the Statute of Frauds; and (2) a motion to dismiss and/or motion for summary judgment seeking to dismiss the claims of Smith Mechanical based on the effect of Travelers' Performance Bond. The Bank later filed a third motion to dismiss the claims of Barker Building, asserting those claims were

barred by the doctrine of *res judicata* and because Barker Building failed to plead fraud with particularity.

The Trial Court denied the Bank's motion for summary judgment as to the claims advanced by Smith Mechanical. As pertinent to this appeal, the Trial Court then dismissed Barker Building's and Travelers' claims against the Bank for the following reasons: (1) Barker Building failed to timely perfect its materialmen's lien; (2) without a valid lien, Barker Building's claim for misrepresentation and/or to rescind the Subordination Agreement became moot; (3) the doctrine of *res judicata* barred "all claims" by Barker Building and Travelers against the Bank; and (4) Barker Building's cross-claim failed to allege fraud in the particularity as required by Tenn. R. Civ. P. 9.02.

The Trial Court later stated two additional reasons to dismiss the misrepresentation claim against the Bank concerning the closing conducted by attorney Kessler. First, the Trial Court concluded that to the extent Barker Building relied on the statements of Kessler, it was relying on the statements of its own attorney rather than the Banks's attorney, thereby negating an essential element of a misrepresentation claim. Second, the Trial Court determined that a dual agency relationship existed with Kessler and the parties to the Subordination Agreement, and that this dual agency barred imputing any alleged misrepresentation to the Bank.

After the Trial Court ruled that *res judicata* barred Barker Building's and Travelers' claims against the Bank, the Bank moved to have Travelers substituted in its stead as the party defendant for the claims advanced by Smith Mechanical. The Bank argued that *res judicata* barred Travelers from asserting any defense to its obligation under the Performance Bond. The Trial Court granted this motion and substituted Travelers as the party defendant with regard to the claims advanced by Smith Mechanical. These particular claims between Smith Mechanical and Travelers eventually were resolved and an Order of Compromise and Dismissal was entered.

Barker Building and Travelers now appeal the dismissal of their claims against the Bank. Barker Building and Travelers claim: (1) the Trial Court erred when it concluded that *res judicata* barred all of their claims against the Bank; (2) the Trial Court erred when it concluded Barker Building and/or Travelers failed to state a claim for misrepresentation; and (3) the Trial Court erred when it dismissed the fraud claim because that claim was pleaded with sufficient particularity as required by Tenn. R. Civ. P. 9. Barker Building also argues that the Trial Court erred when it concluded that there was a dual agency relationship between Kessler, Barker Building, and the Bank, and that this dual agency barred imputing any alleged misrepresentation to the Bank.

The Bank raises two additional issues on appeal. These two additional issues surround alternative bases upon which the Trial Court could have reached its ultimate result which the Bank claims was correct. First, the Bank asserts that Barker Building's misrepresentation claim also should have been dismissed based on the Statute of Frauds. The Bank's second issue is a claim that even though the Trial Court correctly substituted Travelers in its stead because *res judicata* precluded Travelers from raising any defense to the validity of the Performance Bond, the Trial

Court nevertheless erred when it refused to take this same action pursuant to Tenn. Code Ann. § 66-11-142.

## **Discussion**

We first will address whether the Trial Court correctly determined that the various claims advanced by Barker Building and Travelers against the Bank were barred by *res judicata*. Since matters outside the pleadings were considered by the Trial Court when resolving this particular issue, we will treat the Bank's motion to dismiss as a motion for summary judgment in accordance with Tenn. R. Civ. P. 12.02.[3] In *Teter v. Republic Parking System, Inc.*, 181 S.W.3d 330 (Tenn. 2005), our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. The Court stated:

> The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed issues of fact. *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, the appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). And because this inquiry involves a question of law only, the standard of review is de novo with no presumption of correctness attached to the trial court's conclusions. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Teter*, 181 S.W.3d at 337.

In the December 2001 lawsuit seeking injunctive relief, the second lawsuit, Barker Building and Travelers sued the Bank and the Washington County Register of Deeds. In this separate second lawsuit, Barker Building and Travelers noted that in their first lawsuit, the lawsuit now on appeal, they claimed the Subordination Agreement was the result of "misrepresentation by the Bank or mistake." Barker Building and Travelers also alleged: (1) Smith Mechanical filed the

---

[3] In relevant part, Rule 12.02 provides that if, "on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

other lawsuit to enforce a materialmen's lien and Barker cross-claimed against other defendants, including the Bank, seeking to enforce Barker Building's own lien, (2) the Bank filed a "Bond for Release of Lien" pursuant to Tenn. Code Ann. § 66-11-142; (3) that the Bond was improperly filed pursuant to that statute; and (4) the Bank had given notice of its intent to sell the Hotel free of any liens. Barker Building and Travelers then claimed:

> As long as the alleged BOND FOR RELEASE OF LIEN improperly remains on record, any sale of the Hotel Property to a third party may result in the full and complete loss of the Smith lien and both Travelers and Barker (sic) rights will be violated and both will be immediately and irreparably injured or damaged, because both Barker and Travelers, upon payment of any amount to Smith, will be deprived of their right to subrogate to Smith's lien position against any subsequent owner of the Hotel Property. Barker has agreed to indemnify Travelers against any loss.

Barker Building and Travelers sought a temporary restraining order preventing the sale of the property free and clear of any liens "until such liens either are satisfied or bonded off in accordance with Section 66-11-142 TCA". Alternatively, Barker Building and Travelers sought an injunction requiring the Bank to pay any proceeds from the sale of the Hotel into court "pending a full and complete hearing of the merits…." The final request for relief was an injunction ordering the Register of Deeds to expunge the Bond for Release of Liens from the County's records.

As noted previously, after the second lawsuit was filed, the United States Bankruptcy Court entered an order in November of 2001 which modified the automatic stay and directed the Bank to proceed with the foreclosure sale. Following entry of the order in Bankruptcy Court, Barker Building and Travelers acknowledged that the only relief they sought in the second lawsuit which survived the Bankruptcy Court's ruling was their request for an injunction seeking expungement of the Bond for Release of Liens. In January of 2002, the Trial Court entered an order denying the request for injunctive relief and dismissing that action "in its entirety." No appeal was taken.

In March of 2002, the Bank filed a motion to dismiss in the case now on appeal seeking dismissal of the entire cross-claim filed against it by Barker Building and Travelers. The Bank claimed the dismissal of the separate lawsuit seeking injunctive relief operated to bar the cross-claims pursuant to the doctrine of *res judicata*. A hearing was held in August of 2002 after which the Trial Court entered an order granting the motion to dismiss. The Trial Court's order as it relates to the *res judicata* defense simply states that "the doctrine of <u>res</u> <u>judicata</u> operates to bar all claims by Barker and Travelers Casualty & Surety Company of America against First Tennessee…."

In *Lien v. Couch*, 993 S.W.2d 53 (Tenn. Ct. App. 1998), this Court discussed various aspects of the doctrine of *res judicata*. We stated:

Res judicata is a claim preclusion doctrine that promotes finality in litigation. *See Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976); *Jordan v. Johns*, 168 Tenn. 525, 536-37, 79 S.W.2d 798, 802 (1935). It bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *See Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995).

Parties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action. *See Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the parties' legal rights and relations. *See White v. White*, 876 S.W.2d 837, 839-40 (Tenn. 1994).

The principle of claim preclusion prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together. *See Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563 (Fed. Cir. 1996); *Hawkins v. Dawn*, 208 Tenn. 544, 548, 347 S.W.2d 480, 481-82 (1961); *Vance v. Lancaster*, 4 Tenn. (3 Hayw.) 130, 132 (1816). The principle is subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation. *See Davidson v. Capuano*, 792 F.2d 275, 279 (2d Cir. 1986); *Carris v. John R. Thomas & Assocs., P.C.*, 896 P.2d 522, 529-30 (Okla. 1995); *see also Rose v. Stalcup*, 731 S.W.2d 541, 542 (Tenn. Ct. App. 1987) (holding that a subsequent action was not barred because the initial court did not have jurisdiction over the claim). Thus, the Restatement of Judgments points out:

> The general rule [against relitigation of a claim] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court

in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982).…

*Lien v. Couch*, 993 S.W.2d at 55-56. *See also Ostheimer v. Ostheimer*, No. W2002-02676-COA-R3-CV, 2004 WL 689881, at *5 (Tenn. Ct. App. Mar. 29, 2004), *no appl. perm. appeal filed* ("[C]laim preclusion bars any claims that 'were or could have been litigated' in a second suit between the same or related parties involving the same subject matter.").

Tenn. R. Civ. P. 65 presupposes that a party will bring the request for injunctive relief and the underlying claim together. Along this line, Tenn. R. Civ. P. 65.04 provides:

**Rule 65.04 Temporary Injunction –**

\* \* \*

(2) When Authorized. A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

\* \* \*

(7) Consolidation of Hearing With Trial on Merits. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision [65.04(7) ] shall be so construed and applied as to save to the parties any rights they may have to trial by a jury.

Thus, when a party is seeking injunctive relief, that party should bring one action containing both the request for injunctive relief as well as the underlying cause of action. For example, if a party is claiming a document was entered into based upon material misrepresentations or the like and that party believes they will suffer immediate and irreparable injury, then any lawsuit which is filed should contain both any request for injunctive relief as well as the underlying claim for misrepresentation.

Not surprisingly, applying these general principles to this case is not an easy task. On appeal, Barker Building and Travelers admit in their brief that the dismissal of the second lawsuit "operated as an adjudication upon the merits. It served to bar a suit for relief on the same subject matter." Barker Building and Travelers also state:

> Barker recognizes the doctrine of res judicata and its elements. Barker does not contest that the injunctive lawsuit involved some of the same parties that it had asserted causes of action against in the Smith lawsuit. It is also acknowledged that the dismissal of its injunction lawsuit was before a court of competent jurisdiction with regard to the sole relief sought by Barker, a temporary injunction. Clearly, finding no grounds to support the temporary injunction, the Court dismissed the lawsuit. The dismissal became final and under T.R.C.P. 41 was on the merits.

The main argument by Barker Building and Travelers as to why there is no *res judicata* effect from the second lawsuit is that the underlying event (i.e., the filing of the Performance Bond) and the corresponding relief sought in the second lawsuit were distinct from what was at issue between these same parties in the first lawsuit. We disagree.

The claims between the parties to this appeal arise out of the Subordination Agreement and assurances allegedly made to Barker Building which it relied upon when entering into that agreement and which further caused Barker Building to obtain the Performance Bond from Travelers in order to protect its subcontractors from any possible impact the Subordination Agreement might have on their liens. Any claims which were *or could have been* litigated between the parties involving this underlying transaction should, therefore, have been brought together. This would include any and all claims by Barker Building and/or Travelers challenging the validity of the Subordination Agreement and/or the Performance Bond. To hold otherwise would allow Barker Building and Travelers to file a lawsuit against the Bank challenging the validity of the filing of the Performance Bond and, if that did not work, then to file another lawsuit against the Bank challenging the validity of the Performance Bond via claims of misrepresentation, and so on and so on.

The vast majority of any claims by Barker Building and/or Travelers against the Bank challenging the validity of the Subordination Agreement and the Performance Bond were at issue in the first lawsuit, including the claims for fraud or misrepresentation involving the closing. Once

Barker Building and Travelers learned that the Bank had filed the Performance Bond, any challenge to that event could and should have been filed in the same first lawsuit. The Bank's filing of the Performance Bond pursuant to Tenn. Code Ann. § 66-11-142 was simply one more step in the series of closely related and interconnected events and transactions giving rise to the first lawsuit. The Bank's filing of the Performance Bond was not something that was so independent from the events giving rise to the first lawsuit that it would properly permit the filing of an altogether new lawsuit.

What we have then is two distinct lawsuits, but under applicable law each of these lawsuits should have included all of the claims which were or which could have been litigated between the parties on the same cause of action. The issue is whether the present lawsuit now on appeal involves claims which could and should have been litigated in the second lawsuit which went to final judgment. As set forth previously, the second lawsuit contains the following paragraph:

> As long as the alleged BOND FOR RELEASE OF LIEN improperly remains on record, any sale of the Hotel Property to a third party may result in the full and complete loss of the Smith lien and both Travelers and Barker (sic) rights will be violated and both will be immediately and irreparably injured or damaged, because both Barker and Travelers, upon payment of any amount to Smith, will be deprived of their right to subrogate to Smith's lien position against any subsequent owner of the Hotel Property. Barker has agreed to indemnify Travelers against any loss.

It would defy logic and reason to hold that the claims against the Bank in the second lawsuit are separate and distinct from the claims in the first lawsuit.

A possible difficulty arises from the fact that the second lawsuit was filed and disposed of on the merits while the first lawsuit was pending. The doctrine of *res judicata* presupposes the existence of a final judgment on the merits. Thus, whether or not some or all of Barker Building's and Traveler's claims were barred by *res judicata* did not become an issue until there was a final judgment in the second lawsuit.

Assuming for present purposes only that the first lawsuit now on appeal between the Bank, Barker Building, and Travelers did not exist, when the second lawsuit was filed by Barker Building and Travelers seeking injunctive relief, they needed to bring all the claims that could have been brought against the Bank on that cause of action at that time in order not to split their cause of action. In other words, Barker Building and Travelers needed to bring against the Bank in one lawsuit all of its various claims, including its request for injunctive relief, arising out of the Subordination Agreement and the Performance Bond, etc. If we were to excuse Barker Building and Travelers from doing just that because of the pendency of many of these claims in the first lawsuit, then the Trial Court and this Court would have to altogether ignore the fact that there is a final judgment on the merits in the second lawsuit.

We conclude that once the judgment on the merits became final in the second lawsuit seeking injunctive relief, the doctrine of *res judicata* through the principle of claim preclusion operates to bar any claims involving the same cause of action which were or could have been brought by Barker Building and Travelers against the Bank in that same action. This includes any claims against the Bank challenging the validity of the Subordination Agreement and Performance Bond. Admittedly, this is a harsh result, but to hold otherwise would require us to ignore the fact that there has been a separate lawsuit involving the same cause of action between these same parties arising from a single transaction or series of transactions which was disposed of on the merits with a judgment that has long since become final. It also must be remembered that it was the affirmative action of Barker Building and Travelers in filing the second lawsuit which results in this outcome.

Barker Building and Travelers attempt to circumvent any *res judicata* effect of the second lawsuit by claiming they really should not have filed the second lawsuit because they lacked standing to do so until Smith Mechanical's lien was satisfied via the Performance Bond. They make this argument even though they previously admitted, and quite properly so, that the Trial Court in the second lawsuit had subject matter jurisdiction and there otherwise was no barrier to the Trial Court's granting any type of relief requested. We do not believe it appropriate to disregard the *res judicata* effect of a final judgment on the merits because years later the plaintiffs in that action now claim that they really should not have filed that lawsuit to begin with. The short answer to that argument is that they did, and an alleged lack of standing by the plaintiffs is not a proper basis upon which to allow those same plaintiffs later to challenge the validity of the second lawsuit. We again note that to the extent the second lawsuit should not have been filed as a separate lawsuit, Barker Building and Travelers are responsible for that error and any attendant effects arising therefrom.

We affirm the judgment of the Trial Court dismissing all of Barker Building's and Travelers' claims against the Bank because these claims are barred by *res judicata*. In light of this holding, all remaining issues raised by the parties are rendered moot.

## Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellants, Barker Building Company Inc., and Travelers Casualty & Surety Company of America, and their surety.

_____
D. MICHAEL SWINEY, JUDGE