# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 9, 2016 Session

## RAINBOW RIDGE RESORT, LLC, ET AL.
## v. BRANCH BANKING AND TRUST CO.

**Appeal from the Circuit Court for Sevier County**
**No. 12CV-1365-IV    O. Duane Slone, Judge**

_____

### No. E2015-01221-COA-R3-CV-FILED-DECEMBER 28, 2016
_____

The facts in this case implicate the doctrine of res judicata. In 2012, a real estate development limited liability company and its members filed suit in the Sevier County Circuit Court against their mortgage lender, Branch Banking and Trust Company (the bank). In that action, the developers alleged, *inter alia*, that the bank was guilty of fraud, breach of contract, and unjust enrichment. That suit involved four separate parcels of real property. While the case in circuit court was pending, the bank sued three individuals in the Sevier County Chancery Court, seeking a declaratory judgment regarding the priority of a security interest in one of the parcels of property at issue in the circuit court case. In the chancery court action, the bank joined the developers as parties. In response, the developers filed a counterclaim in which they repeated allegations included in the circuit court case and asserted other claims derived from the same set of facts. The two cases were later consolidated. In each case, the bank filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim. The court heard both motions at a single hearing. On June 8, 2015, the trial court filed two orders – one in the circuit court suit and one by interchange in the chancery court action – granting the bank's motions. The developers appealed only the circuit court order. Unchallenged, the chancery court order became final. The bank later moved to dismiss this appeal, arguing that the doctrine of res judicata barred further litigation. We deferred a ruling on the bank's motion. We now hold that the motion has merit. Accordingly, we affirm the trial court's judgment dismissing this case. We do so based upon the doctrine of res judicata.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

John Frank Higgins, Nashville, Tennessee, for the appellant, Rainbow Ridge Resort LLC, Wayne R. Hill, and Cornelia D. Hill.

W. Morris Kizer and John M. Kizer, Knoxville, Tennessee, for the appellee, Branch Banking and Trust Company.

## OPINION

### I.

Rainbow Ridge Resort, LLC, and its members, Wayne Hill and Cornelia Hill, husband and wife (collectively, the developers), entered into an agreement with the bank to finance the development of three parcels of property, known as the Cabin Properties. In 2006, the bank received three promissory notes from the developers secured by deeds of trust and security agreements. Separately, in 2007, the developers executed a promissory note to the bank on a fourth parcel, a 16.8 acre tract, secured by a deed of trust and security agreement. The developers state that the bank, at that time, represented that the deed of trust would encumber the 16.8 acre tract to secure payment of a $210,000 letter of credit.

In January 2009, the developers learned the bank claimed an $800,000 security interest on the 16.8 acre tract. The same month, the bank informed the developers that the transferring documents for the Cabin Properties were defectively flawed. An error by the bank's agent wrongly listed the property owner on the transferring documents as "Rainbow Ridge, LLC," rather than "Rainbow Ridge Resort, LLC." As a result, the bank did not have a security interest in the Cabin Properties. To correct the error, the bank asked the developers to participate in a reformation action. The developers agreed on the condition that the bank would extend the developer's time for performance under certain notes and release its lien on the 16.8 acre tract. The reformation action was completed by an agreed final order in December 2009. According to the developers, the bank never performed as promised. For more than a year, they communicated with bank employees about the note renewals, but the renewals were never finalized. The developers assert that, instead, "[the bank] . . . engaged in a series of misrepresentations and deliberate inactions to stall and preclude what were the ongoing negotiations" of the note renewals that would have permitted them to fulfill their obligation to the bank. In November 2012, the bank gave notice of a successor trustee's sale of the Cabin Properties.

2

The day of the sale, December 13, 2012, the developers sued the bank in circuit court, alleging fraud/fraudulent inducement/fraudulent misrepresentations, breach of contract, negligent and/or intentional misrepresentation, and breach of fiduciary duty. The developers sought injunctive relief to enjoin foreclosures and punitive damages. They also sought an ex parte order to restrain and enjoin the bank from foreclosing on the deeds of trust for the Cabin Properties, which the circuit court granted. The bank filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss. In response, the developers sought and were granted leave to file an amended complaint, which they did in April 2013. In it, they alleged fraud/fraudulent inducement/fraudulent misrepresentation, breach of contract, and unjust enrichment, and sought injunctive relief to enjoin the foreclosures. The amended complaint stated, in part, as follows:

> In view of the fact that the errors on the documents prepared by [the bank] and/or its agents were known to [the bank] for years before the admission thereof to the [developers], and in view of the fact that the admission was not made prior thereto when [the bank] continued to cause [the developers] to become deeper and deeper in debt to [the bank] (and when [the bank] had no security interest in any of the properties as a result of the erroneous security instruments), it is more than obvious that [the bank] engaged in a well-planned scheme to defraud the [developers] and carefully chose the time to induce and trap [the developers] into agreeing to "reform the instruments" so that [the bank] could steal the most property from the [developers] and set the [developers] up for the maximum liability.

The bank again filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss.

On September 3, 2013, the bank filed a complaint in chancery court against three individuals named as the beneficiaries under a will – Lee Edward White, James Michael White, and April Bryan (collectively the beneficiaries) – and joined the developers. In the chancery court case, the bank sought a judgment solely to enforce a subordination agreement on the 16.8 acre tract that would declare deeds of trust entered by the developers in favor of the bank superior to ones they previously entered in favor of the beneficiaries. The bank stated in its complaint that it joined the developers

> (a) due to their ownership of real property which is encumbered by [the bank]'s deeds of trust . . . (b) due to the fact that this action is to determine the priority of deeds of

3

> trust they executed to secure their obligations to different creditors, and (c) so that they may assert such matters as they deem appropriate to protect their respective interests herein.

The developers responded with an answer and counterclaim. Through the counterclaim, the developers sued the bank for fraud/fraudulent inducement/fraudulent misrepresentation and unjust enrichment. They also sought declaratory relief for the court to declare the bank had no legal or equitable right to the 16.8 acre tract. Several facts given in support of the claims of fraud and unjust enrichment in the counterclaim were nearly identical to those in the developers' amended complaint in circuit court. Specifically, the counterclaim relied on the same allegation reprinted above – that the bank engaged in a "well-planned scheme to defraud the [developers]," "steal the most property from the [developers]," and "set [the developers] up for the maximum liability."

The bank responded with a motion to dismiss the counterclaim on the doctrine of prior suit pending, stating: "The counterclaim which the [developers] have asserted herein encompasses the subject matter of the circuit court case." In July 2014, the developers responded, stating that the doctrine did not apply "as the [c]ounterclaim herein contains additional facts and allegations relating to the [s]ubordination [a]greements which are not part of the 2012 action . . . ." There is no order in the record showing that the trial court ruled on this "prior suit pending" motion. In August 25, 2014, the bank filed a separate Tenn. R. Civ. P. 12.02(6) motion to dismiss the developers' counterclaim. There, the bank stated again that in the circuit court case the developers had "previously asserted" many of the allegations made in the counterclaim.

On March 31, 2014, the judge in the circuit court case recused himself and reassigned the case on May 21, 2014 to Judge O. Duane Slone, Circuit Judge.[1] An order of recusal had been entered by the original judge in the chancery court case on December 10, 2013. That case was also assigned to Judge Slone in an order entered June 27, 2014. On July 28, 2014, a hearing occurred on the bank's motion to dismiss the amended complaint in the circuit court action. At the same hearing, the court consolidated the two cases.[2] At that hearing, the court granted the bank's motion to dismiss the amended complaint.

In December 2014, the trial court heard the bank's motion to dismiss the chancery court case. At that time, the court had not yet entered an order dismissing the circuit

---

[1] The Order of Reassignment designated that "This case shall now bear the docket number 2012-1365-IV," where it had previously been "2012-1365-I."

[2] An order consolidating the cases was filed June 8, 2015, nunc pro tunc July 28, 2014.

court case. During the hearing, the developers moved for and were granted permission to file a second amended complaint in the circuit court case and an amended counterclaim in the chancery court case predicated on emails that had been discovered between the developers and the bank. The developers did not file the amended counterclaim, but did file a second amended complaint that again alleged three counts – fraud/fraudulent inducement/fraudulent misrepresentation, breach of contract, and unjust enrichment, repeating many of the same allegations as in the first amended complaint. The developers also repeated the allegation that the bank carried out a "well-planned scheme to defraud the [developers]" to "steal the most property from the [developers]" and "set [the developers] up for the maximum liability," adding now that the bank did so

> after continually delaying renewal of the Notes[3] so as to manufacture a fraudulent "default" and place [the developers] into the most detrimental position possible despite the prior affirmative representation of [the bank's] management that it was not their intent to do so.

(Footnote added.) The bank, again, moved to dismiss. On April 27, 2015, the trial court held a hearing on the bank's motions to dismiss the developers' counterclaim and second amended complaint. The court granted both motions, entering two separate orders – one in circuit court and one in chancery court. Both were filed June 8, 2015.

On June 29, 2015, the developers filed a "Notice of Appeal," stating: "Notice is hereby given that Plaintiffs in the above styled case, hereby Appeals [sic] to Tennessee Court of Appeals for the from the [sic] final judgment from an Order Granting Defendants' Motion for Summary Judgment [sic] entered in this action on the 3rd day of June, 2015." On the face of the motion, the "above styled case" is the circuit court case. No notice of appeal was filed in the chancery court case. On December 1, 2015, the Bank filed a Tenn. R. App. P. 22 motion to dismiss the appeal, arguing:

> the issues raised in this action have been adjudicated and finally settled by the Chancery Court for Sevier County, Tennessee in a counterclaim filed by the appellants in the case of *Branch Banking and Trust Company v. Lee Edward White, et al.* (No. 13-9-281). Accordingly, further litigation

---

[3] Elsewhere in the second amended complaint, the developers define the "Notes" as the "amended and modified promissory notes" that were the result of negotiations between the bank and the developers over the three parcels of land known as the Cabin Properties.

on the issues raised in this appeal is barred by the doctrine of
res judicata.

We deferred ruling on the motion until now.

## II.

The developers present the following issues for review, which we quote verbatim from their brief:

> Whether the lower court, sitting as presiding Judge in both the Circuit Court and Chancery Court cases, erred in dismissing Appellants' Second Amended Complaint (in the Circuit Court case) and their Amended Counterclaim (in the Chancery Court case) with prejudice.

The bank restates the issues as follows, which we quote verbatim from their brief:

> Whether this action should be dismissed based on the doctrine of res judicata?

> Whether the trial court erred in granting the motion to dismiss of [the bank] predicated on Rule 12.02(6) of the Tennessee Rules of Civil Procedure?

## III.

We first must address the developers' request for this Court to review the trial court's dismissal of their amended counterclaim in the chancery court case. First, we note that, based on the record, the developers did not amend their counterclaim. Second, the developers did not appeal the chancery court order of dismissal. The trial court had consolidated the circuit court case – from which the developers later did file a notice of appeal – with the chancery court case. However, "[c]onsolidation of separate actions under Tenn. R. Civ. P. 42.01[4] does not create one action . . . . Consolidation simply

---

[4] Tenn. R. Civ. P. 42.01 states that "When actions involving a common question of law or fact are pending before a court, the court may order all the actions consolidated or heard jointly, and may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

allows a single trial of common issues and permits joint discovery for purposes of judicial economy." ***McMillin v. Cracker Barrel Old Country Store, Inc.***, No. E2008-00342-COA-R3-CV, 2009 WL 749214, at *3 (Tenn. Ct. App., filed Mar. 23, 2009) (footnote added) (citing ***City of Johnsonville v. Handley***, No. M2003-00549-COA-R3-CV, 2005 WL 1981810 at * 9 (Tenn. Ct. App., filed Aug.16, 2005)); s*ee also **In re Bridgestone/Firestone***, 495 S.W.3d 257, 267 (Tenn. Ct. App. 2015), *appeal denied* (Nov. 24, 2015). An order of consolidation has no other effect. ***Chitwood v. Myers***, 443 S.W.2d 827, 830-31 (Tenn. Ct. App. 1969). "When cases have been consolidated, the issues remain precisely on the pleadings as they were before, and between the same parties, and are to be determined exactly as if the cases had been heard separately." ***Webb v. Poynter***, No. 02A01-9707-CV-00168, 1999 WL 145257, at *4 (Tenn. Ct. App., filed Mar. 18, 1999) (quoting ***Chitwood***, 443 S.W.2d at 830-31) (internal quotation marks omitted). T

The trial court entered separate orders of dismissal for the chancery court and circuit court cases. Only one order was appealed. Because consolidated lawsuits remain separate actions, "it logically follows that consolidation cannot cure defects in either lawsuit." ***Givens v. Vanderbilt Univ.***, No. M2011-00186-COA-R3-CV, 2011 WL 5145741, at *3 (Tenn. Ct. App., filed Oct. 28, 2011) (citing ***McMillin***, 2009 WL 749214, at *3). The developers' appeal of the order of dismissal in the circuit court case does not constitute an appeal of the chancery court case.

Without an appeal, the chancery court order became a final judgment thirty days after it was entered. ***Creech v. Addington***, 281 S.W.3d 363, 377 (Tenn. 2009) (holding, in part, "[a]s a general rule, a trial court's judgment becomes final thirty days after its entry unless a party files a timely notice of appeal or specified post-trial motion"). "The thirty-day time limit for filing a notice of appeal is mandatory and jurisdictional in civil cases." ***Albert v. Frye***, 145 S.W.3d 526, 528 (Tenn. 2004) (citing ***Binkley v. Medling***, 117 S.W.3d 252, 255 (Tenn. 2003)). As a result, we lack jurisdiction to review whether the trial court erred in granting the order of dismissal in the chancery court case.

## IV.

The bank asserts this appeal is barred by the doctrine of res judicata. Res judicata bars "a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." ***Richardson v. Tenn. Bd. of Dentistry***, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting ***Goeke v. Woods***, 777 S.W.2d 347, 349 (Tenn. 1989)). Res judicata acts as a " 'rule of rest' meant to promote finality, prevent inconsistent or contradictory judgments, conserve resources, and prevent vexatious lawsuits." ***State ex rel. Johnson v. Gwyn***, No. M2013-

02640-COA-R3-CV, 2015 WL 7061327, at \*6 (Tenn. Ct. App., filed Nov. 10, 2015) (citing **Jackson v. Smith**, 387 S.W.3d 486, 491 (Tenn. 2012)). This doctrine "is based on public policy considerations that mandate an end to litigation" rather than "a presumption that the final judgment was correct or just." **Roberts v. Vaughn**, No. W2008-01126-COA-R3-CV, 2009 WL 1608981, at \*3 (Tenn. Ct. App., filed June 10, 2009) (citing **Moulton v. Ford Motor Co.**, 533 S.W.2d 295, 296 (Tenn. 1976)).

To establish a res judicata defense, our Supreme Court has stated the moving party

> must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. **Lien v. Couch**, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *see also* **Lee v. Hall**, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990).

**Jackson**, 387 S.W.3d at 491. "Where there is any uncertainty the doctrine does not apply." **Justice v. Justice**, No. 01-A-01-9312-PB00541, 1995 WL 81414, at \*2 (Tenn. Ct. App., filed Mar. 1, 1995) (citing **Gregory v. Gregory**, 803 S.W.2d 242 (Tenn. App. 1990)). Further,

> [r]es judicata is one of the affirmative defenses that must be included in the defendant's answer. Tenn. R. Civ. P. 8.03. However, in appropriate circumstances, it may be raised in a Tenn. R. Civ. P. 12.02(6) motion. For a Tenn. R. Civ. P. 12.02(6) motion to be used as a vehicle to assert an affirmative defense, the applicability of the defense must "clearly and unequivocally appear[ ] on the face of the complaint." **Givens v. Mullikin ex rel. Estate of McElwaney**, 75 S.W.3d 383, 404 (Tenn. 2002) (quoting **Anthony v. Tidwell**, 560 S.W.2d 908, 909 (Tenn. 1977)). In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief. *See* **Ragsdale v. Hill**, 37 Tenn. App. 671, 681, 269 S.W.2d 911, 916 (1954) (holding that a demurrer asserting res judicata was improper when the petition being challenged did not mention the prior decree);

8

*see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 713-14 (3d ed. 2004).

*Jackson*, 387 S.W.3d at 491-92 (internal citations in original omitted).

We first must determine whether the bank properly raised the defense of res judicata. In this case, the bank did not specially plead the defense of res judicata at the trial court. Consequently, the trial court made no finding on this issue. In general, "[a]bsent any record that such a defense was raised and litigated in the trial court, we will consider it waived." *State v. Loden*, No. 03C01-9702-CR-00075, 1998 WL 151135, at *2 (Tenn. Crim. App., filed Apr. 2, 1998). However, in this case, the bank could not have established the defense of res judicata before the order of dismissal in the chancery court case became final. As stated above, the trial court filed the orders of dismissal in the chancery court case and circuit court case on the same day, June 8, 2015. However, only one of those orders was appealed. With no appeal filed, the trial court's order dismissing the chancery court case became final thirty days after its entry. *McBurney v. Aldrich*, 816 S.W.2d 30, 34 (Tenn. Ct. App. 1991). The bank could not assert a res judicata defense before the judgment was final.

Recently, in *Gwyn*, 2015 WL 7061327, this Court considered whether res judicata could bar an active appeal from going forward when res judicata was not raised and could not have been established at trial because the judgment in the related case was not yet final. There, the plaintiffs sought a declaration that Tenn. Code Ann. § 10-7-504(a)(2)(A) was unconstitutional and an order for the Tennessee Bureau of Investigation to turn over investigation records on Judge Richard Baumgartner. *Id.* at *2. We stated:

> In the present case, the Trial Court did not hold that [p]laintiffs' claims were barred by res judicata. Indeed, it could not have done so because the Tennessee Court of Criminal Appeals did not file its opinion in *State v. Cobbins* [No. E2013-02726-CCA-WR-CO (Tenn. Crim. App., filed Feb. 4, 2015)] until February 2015, quite some time after the Trial Court's November 2013 disposition in the present case. Typically, *res judicata* is asserted as an affirmative defense.
>
> *      *      *
>
> However, when a plaintiff pursues two similar lawsuits in different venues, that plaintiff runs the risk of receiving an unfavorable result in the initial case and having that result

9

bind the other case. *See **Crain v. CRST Van Expedited, Inc.**,* 360 S.W.3d 374 (Tenn. Ct. App. 2011) (holding that a party may pursue what would be a compulsory counterclaim in a separate lawsuit but that party runs the risk of losing in the initial lawsuit and being bound by that result). In the present case, it is clear that from the beginning, both [p]laintiffs and Gwyn grappled with what effect, if any, the concurrent Knox County Criminal Court proceedings would have on the instant case. In [p]laintiffs' amended complaint, they acknowledge the concurrent action taking place in Knox County Criminal Court . . . .

\*　　\*　　\*

. . . Likewise, Gwyn's motion to dismiss discusses the criminal court matter and its possible ramifications, stating:

> Here, the Knox County Criminal Court has assumed jurisdiction over the complete TBI file involving the investigation into former judge Baumgartner's conduct, much of which is filed under seal in the clerk's office. While [p]laintiffs are not asking this Court to specifically order the TBI file in Knox County released to them, a declaration by this Court that T.C.A. § 10-7-504(a)(2)(A) violates [p]laintiffs' constitutional rights and an order allowing them access to the TBI file as [p]laintiffs are requesting would have the same effect. *Not only would this allow [p]laintiffs to re-litigate issues they have already presented and that are still pending in Knox County, as discussed in [d]efendant's previous memorandum of law, but [p]laintiffs are asking this Court for relief that would be in direct contradiction to the criminal court's ruling and would likely interfere with that court's order* denying [p]laintiffs access. For example, if [p]laintiffs are successful in obtaining a declaratory judgment that the confidentiality

10

> statute is unconstitutional, [p]laintiffs could then use this Court's ruling to demand that the criminal court allow them to see the entire TBI file currently under seal in the clerk's office.
>
> While the elements of res judicata could not be met during the proceedings below as no final judgment had yet come down in the concurrent proceedings in Knox County Criminal Court, the parties certainly were on notice of the possible impact of a final judgment there.

2015 WL 7061327, at *3-4 (italics in original omitted; emphasis added). In **Gwyn**, we went on to find that, due to res judicata, the final order in **Cobbins** barred the appeal. **Id.** at *9.

In the current case, the parties, through their pleadings, considered the similarities of the developers' allegations in the two concurrent cases. The developers referenced the ongoing circuit court case in their chancery court counterclaim, stating "the purported effect of the Agreed Final Order is currently the subject of ongoing litigation between [the developers] and [the bank]" in the circuit court case, 12CV-1365-1. Additionally, the bank moved to dismiss the counterclaim due to the doctrine of "prior suit pending."[5] The bank stated:

> *The [developers] answered the complaint and asserted their counterclaim, which encompasses the claims the [developers] have asserted against [the bank] in an action styled Rainbow Ridge Resort, LLC, Wayne Hill and Cornelia Hill and v. Branch Banking and Trust Company, currently pending* as Case No. 12CV-1365-1 in the Circuit Court for Sevier County, Tennessee . . . . A copy of the amended complaint which the [developers] filed in the Circuit Court Case on April 19, 2013, is attached hereto as EXHIBIT 1.

---

[5] The doctrine of prior suit pending has four essential elements: "1) the lawsuits must involve identical subject matter; 2) the lawsuits must be between the same parties; 3) the former lawsuit must be pending in a court having subject matter jurisdiction over the dispute; and 4) the former lawsuit must be pending in a court having personal jurisdiction over the parties." **Comcast of S. v. Elec. Power Bd. of Chattanooga**, No. E2008-01788-COA-R3-CV, 2009 WL 1328336, at *5 (Tenn. Ct. App., filed May 13, 2009) (citing **West v. Vought Aircraft Indus., Inc.**, 256 S.W.3d 618 (Tenn. 2008)) (internal citations omitted).

> *The counterclaim which the [developers] have asserted herein*
> *encompasses the subject matter of the Circuit Court Case. As*
> *such, the counterclaim asserted herein should be dismissed*
> *on the doctrine of prior suit pending.*

(Capitalization in original; numbering in original omitted; emphasis added.) The developers filed a response to the motion. The record before us on appeal does not include a ruling from the trial court on the issue of prior suit pending. The bank repeated similar assertions in its motion to dismiss the counterclaim, filed on August 25, 2014. The motion states, in relevant part:

> [The developers] answered the complaint and asserted their counterclaim, which sets forth certain allegations [the developers] previously asserted against [the bank] in the Circuit Court . . . including allegations that [the bank] is not entitled to a lien on the 16.8 acre tract referenced in the counterclaim . . . under theories of fraud/fraudulent inducement and unjust enrichment. Paragraphs 4 through 21 and 23 through 30 of the counterclaim are, in substance, virtually identical to paragraphs 53 through 74 and 80 through 83 of the amended complaint filed by the [developers] in the Circuit Court Case. In fact, large portions of the allegations of paragraphs 53 through 74 and 80 through 83 of the amended complaint filed in the Circuit Court Case are copied verbatim in the counterclaim.

The bank adopted by reference the language in the motion quoted above in its motion to dismiss the second amended complaint in the circuit court case, which is now the subject of the current appeal.

The developers suggest in their brief on appeal that a later-filed suit cannot bar the appeal of an earlier filed case, adding "that is not how res judicata operates." We addressed this issue in *Smith Mech. Contractors, Inc. v. Premier Hotel Dev. Group*, 210 S.W.3d 557 (Tenn. Ct. App. 2006). In that case, parties to an ongoing lawsuit filed a second, separate lawsuit against another party to the first suit. As it turned out, the second lawsuit was resolved before the first. The decision in the later-filed case was not appealed. The trial court then dismissed the first suit on the grounds of res judicata. We affirmed the trial court's dismissal on appeal, stating:

12

> A possible difficulty arises from the fact that the second lawsuit was filed and disposed of on the merits while the first lawsuit was pending. The doctrine of res judicata presupposes the existence of a final judgment on the merits. Thus, whether or not some or all of [the] claims were barred by res judicata did not become an issue until there was a final judgment in the second lawsuit.
>
> \* \* \*
>
> We conclude that *once the judgment on the merits became final in the second lawsuit . . . the doctrine of res judicata through the principle of claim preclusion operates to bar any claims involving the same cause of action which were or could have been brought by [the plaintiffs] against [the defendants] in that same action.* . . . Admittedly, this is a harsh result, but to hold otherwise would require us to ignore the fact that there has been a separate lawsuit involving the same cause of action between these same parties arising from a single transaction or series of transactions which was disposed of on the merits with a judgment that has long since become final.

**Smith Mech. Contractors**, 210 S.W.3d at 567 (italics from original omitted; emphasis added).

We hold that the elements of res judicata could not have been met at the trial court level in the circuit court case because there was not yet a final judgment in the concurrent proceeding. Further, we find that the parties filed pleadings discussing the similarities in the allegations made by the developers in the circuit court and chancery court cases. "[W]hen a plaintiff pursues two similar lawsuits in different venues, that plaintiff runs the risk of receiving an unfavorable result in the initial case and having that result bind the other case." **Gwyn**, 2015 WL 7061327, at \*3 (citing **Crain**, 360 S.W.3d 374). This applies regardless of the order in which the cases were filed. **Smith Mech. Contractors**, 210 S.W.3d at 567. Concluding that the defense of res judicata in the circuit court case is properly before this court, we now turn to whether the bank has established the elements for a res judicata defense.

Previously we have held that, pursuant to Tenn. R. Civ. P. 41.02(3), "an order granting a motion to dismiss for failure to state a claim upon which relief can be granted

13

under Tennessee Rule of Civil Procedure 12.02(6) is an adjudication on the merits." *Creech*, 281 S.W.3d at 378 (citing *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 766 (Tenn. Ct. App. 2001), *perm. to app. denied* (Tenn. 2002)). This is because "[u]nlike the dismissal of a complaint on procedural or technical grounds, '[t]he sole purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to test the legal sufficiency of the complaint.' " *Creech*, 281 S.W.3d at 378 (quoting *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992)). The court order in the chancery court case granted the bank's 12.02(6) motion, holding that the developers had failed to state a claim upon which relief could be granted. Therefore, our case law indicates the matter was adjudicated on the merits. Because no appeal was filed in the chancery court case, the order became a final judgment thirty days after its entry. *Creech*, 281 S.W.3d at 377 (citing Tenn. R. App. P. 4(a)-(c)).

By statute, "[t]he chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract . . . ." Tenn. Code Ann. § 16-11-102(a). The same statute goes on to provide in subpart (b) that if a suit excepted by the language in subpart (a) is brought in chancery court but no objection is pleaded, the suit "may be . . . heard and determined by the chancery court upon the principles of a court of law." Tenn. Code Ann. § 16-11-102(b). Here, neither party challenged the chancery court's jurisdiction over the second-filed lawsuit. For these reasons, we find the underlying judgment was rendered by a court of competent jurisdiction.

We also find that "the same parties . . . were involved in both suits." *Jackson*, 387 S.W.3d at 491. On the face of the counterclaim in the chancery court case as well as the second amended complaint in the circuit court case, both cases involve the same parties. In the chancery court case, the bank initially filed suit against the beneficiaries and the developers. The developers filed a counterclaim against the bank only. In both suits, the developers, as either plaintiffs or counter-plaintiffs, brought charges against the bank.

Finally, we turn to the remaining element needed to establish res judicata – whether the same claim or cause of action was asserted in both lawsuits. The developers argue on appeal that "Tennessee law requires identity of the same claim or cause of action in two separate cases in order for res judicata to apply," but here, the bank "has not and cannot satisfy the identity cause of action requirement. . . ." We disagree. First, the causes of action raised need not be identical. "The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to *all issues which were, or could have been, litigated in the former suit*." *Jackson*, 387 S.W.3d 486, 491 (Tenn. 2012) (citing *Creech*, 281 S.W.3d at 376).

14

Instead, the cause of action requirement is determined by a "transactional standard," which our Supreme Court adopted in *Creech*. *Roberts*, 2009 WL 1608981, at *5 (citing *Creech* 281 S.W.3d at 379). The court explained this standard as follows:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Creech*, 281 S.W.3d at 379-80 (quoting Restatement (Second) of Judgments § 24(1)). Under this standard, "[t]wo suits . . . shall be deemed the same 'cause of action' for purposes of *res judicata* where they arise out of the same transaction or a series of connected transactions.' " *Roberts*, 2009 WL 1608981, at *5 (quoting *Creech*, 281 S.W.3d at 381). Res judicata may also apply where two suits are based on "essentially the same" facts. *Fed. Nat. Mortg. Ass'n v. Simmons*, No. M2013-00945-COA-R3-CV, 2014 WL 4724908, at *8 (Tenn. Ct. App., filed Sept. 23, 2014).

Here, many of the charges the developers brought against the bank in the two lawsuits overlap. The counterclaim in chancery and second amended complaint in circuit both allege fraud/fraudulent inducement/fraudulent misrepresentation and unjust enrichment. The second amended complaint also alleges breach of contract and seeks injunctive relief to enjoin the bank from foreclosing on the Cabin Properties. The counterclaim also seeks declaratory relief regarding title to the 16.8 acre tract. However, despite these differences, both suits are based on a common scheme. The counterclaim and second amended complaint *both* relied on an assertion that the bank engaged in a "well-planned scheme to defraud the [developers]," "steal the most property from [them]," and "set [them] up for the maximum liability." Further, in the counterclaim, the developers state:

> In view of the totality of the circumstances including the intentional misuse of a multi-year relationship and a deliberate pattern of lying in order to induce the [developers] to undertake actions to permit [the bank] to obtain security interests in [the developers]' real properties when, as a result of [the bank's] own professional negligence, it had no such interest, the imposition of punitive damages against [the bank] is warranted, and should be in an amount to appropriately punish [the bank] and to serve as a deterrent to

15

others who may be similarly inclined to engage in the type of conduct engaged in by [the bank] as set forth above.

The developers repeat this same assertion in their second amended complaint, but add that the amount should be "no less than" $250,000,000. In both suits, the developers put forth almost identical language to support almost all of their assertions regarding fraud and unjust enrichment. Further, both suits allege the same "scheme" or "pattern of lying" was used to establish the developers' claims against the bank, wherein the developers claim they participated in reformation actions for the benefit of the bank in exchange for the bank's promise of performance, though the performance was never completed. This scheme was also the basis for the breach of contract claim, as well as declaratory relief on the 16.8 acre tract and injunctive relief regarding the Cabin Properties. For these reasons, we find the suits "arise out of the same transaction or a series of connected transactions." *Roberts*, 2009 WL 1608981, at *5 (quoting *Creech*, 281 S.W.3d at 381).

In summary, we find that the June 8, 2015 order dismissing the developers' counterclaim in chancery court was final, on the merits, and rendered by a court of competent jurisdiction. Further, the developers' second amended complaint in the circuit court case and counterclaim in the chancery court case both involved the same parties and the same cause of action was or could have been brought in the other suit. Accordingly, we hold, as a matter of law, that the doctrine of res judicata bars further litigation in this matter. *Jackson*, 387 S.W.3d at 493.

## V.

We affirm the trial court's judgment. Since the issue of res judicata is dispositive, we do not reach the issue of whether the trial court erred in granting the bank's Tenn. R. Civ. P. 12.02(6) motion to dismiss the developers' second amended complaint in the circuit court case. The costs on appeal are assessed to the appellants, Rainbow Ridge Resort, LLC, Wayne Hill, and Cornelia Hill. We remand the case for the collection of costs assessed at the trial court level.

_____
CHARLES D. SUSANO, JR., JUDGE

16