# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 18, 2018 Session

## BRANCH BANKING AND TRUST COMPANY v. WAYNE R. HILL ET AL.

### Appeal from the Chancery Court for Sevier County
### No. 16-3-118    Telford E. Forgety, Jr., Chancellor

---

### No. E2018-00232-COA-R3-CV

---

In this action for a deficiency judgment following the foreclosure sale of six tracts of real property, some of which were improved by resort cabins, the trial court granted the plaintiff bank's motion for partial summary judgment against the defendant real estate developers and their limited liability company, for which the developers were guarantors, finding that the developers were liable for deficiency balances owed on promissory notes and guaranty agreements, as well as accrued interest, bank charges, late fees, and attorney's fees. Following a bench trial concerning the amounts owed, the trial court awarded money judgments to the bank in the amounts, respectively, of $1,180,223.77 against the developers as individuals and $144,848.30 against the developers' limited liability company. Finding, *inter alia*, that the developers had failed to properly plead the defense of inadequate foreclosure sales prices, the trial court sustained the bank's objections to the developers' requests to cross-examine the bank's witnesses and introduce additional evidence regarding the adequacy of the foreclosure sales prices and foreclosure process. The trial court subsequently denied the developers' motion to vacate the order granting the money judgments. The developers have appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

John Frank Higgins, Nashville, Tennessee, for the appellants, Wayne R. Hill, Cornelia D. Hill, and Rainbow Ridge Resort, LLC.

John M. Kizer and W. Morris Kizer, Knoxville, Tennessee, for the appellee, Branch Banking and Trust Company.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Branch Banking and Trust Company ("the Bank"), initiated the instant action by filing a complaint in the Sevier County Chancery Court ("trial court") on March 18, 2016, seeking a judgment for balances owed on promissory notes and guaranty agreements related to parcels of real property and resort cabins located in the Rainbow Ridge Resort project in Sevierville, Tennessee. The Bank also sought attorney's fees as provided for in the promissory notes at issue. The Bank initially named as defendants Wayne R. Hill and Cornelia D. Hill ("the Hills"); Rainbow Ridge Resort, LLC ("Rainbow Ridge"); Tyler C. Huskey, Successor Trustee ("Mr. Huskey"); the State of Tennessee ("the State"); and Rainbow Ridge Owners Association, Inc. ("the Owners Association"). The defendants involved in this appeal are the Hills and Rainbow Ridge (collectively, "Appellants"). It is undisputed that at all times relevant to this appeal, the Hills were the only members of Rainbow Ridge, a Tennessee limited liability company that had been administratively dissolved by the Tennessee Secretary of State in August 2011.

The Bank's claims against the Hills individually concerned allegations of default related to four promissory notes, identified in the complaint as "Note 4," "Note 9," "Note 14," and "Note 15" (collectively "the Hill Notes"). Attached as exhibits to the complaint were copies of the Hill Notes and corresponding deeds of trust, each of which had each been initially executed in 2005 or 2006 and duly recorded with the Sevier County Register of Deeds. Each of the deeds of trust included a clause following the specific property description stating: "TOGETHER WITH all rents, all improvements now or hereafter erected on the property, all easements, all fixtures, now or hereafter a part of said property . . . ." Neither the original deeds of trust securing the Hill Notes nor the corresponding successor trustee deeds executed at the time of the foreclosure sales describe specific improvements. However, testimony presented during trial concerning the amounts of the deficiency judgments indicated that by the time of the foreclosure sales, three of the four land parcels encumbered by the Hill Notes (all but that encumbered by Note 4) had each been improved by the construction of a cabin.

At the time of trial, the Bank averred that the principal balance owed on Note 4 was $66,069.77 with accrued interest of $24,317.36 and bank charges of $3,339.38; the principal balance owed on Note 9 was $447,871.82 with accrued interest of $127,229.81 and bank charges of $4,368.00; the principal balance owed on Note 14 was $360,000.00 with accrued interest of $102,267.50 and bank charges of $1,100.00; and the principal owed on Note 15 was $359,040.00 with accrued interest of $101,994.78 and bank charges of $4,529.12.

2

The claims against Rainbow Ridge and the Hills, jointly and severally, involved a promissory note and guaranty agreement, identified as "the Rainbow Note," executed by the Hills on behalf of Rainbow Ridge in the original principal amount of $800,000.00 in March 2007. The documents pertaining to the Rainbow Note were also admitted as exhibits at trial. The Rainbow Note was partially secured by two simultaneously executed deeds of trust, encumbering, respectively, an 8.17-acre tract and a 16.8-acre tract of real property. The deeds of trust related to the Rainbow Note were duly recorded. Each deed of trust indicated that it "secure[d] an obligation incurred for the construction of an improvement on land . . . ." The Bank alleged that Rainbow Ridge and the Hills, as guarantors, owed a principal amount on the Rainbow Note in the amount of $723,811.00, with accrued interest by the time of trial in the amount of $139,273.30 and bank charges of $5,575.00. W. Morris Kizer testified that at the time of the foreclosure sale on May 13, 2016, the 16.8-acre tract remained unimproved.[1]

For each of the Hill Notes, the Bank's allegations of default against the Hills included nonpayment of county real estate taxes on the encumbered properties and failure to pay the notes upon maturity. Concerning Note 4, the Bank also averred that the Hills had failed to pay a state tax lien against the encumbered property, the sole property encumbered by a Hill Note that had not been improved by a cabin. As to the Rainbow Note, the Bank's allegations of default against the Hills included nonpayment of county real estate taxes on the encumbered properties, failure to pay a state tax lien against the 8.17-acre tract, failure to pay the Rainbow Note upon its maturity, and the 2011 administrative dissolution of Rainbow Ridge as an LLC.

Based on a "dragnet clause" included in the amended and modified promissory note concerning Note 4, the Bank asserted in its complaint that Note 4 encumbered not only the 9.27-acre tract but also the other tracts encumbered by the Hill Notes and the Rainbow Note. The Bank thereby requested an order directing a judicial foreclosure of the 9.27-Acre Deed of Trust securing Note 4. *See Higdon v. Regions Bank*, No. E2009-01298-COA-R3-CV, 2010 WL 1924019, at *5 (Tenn. Ct. App. May 13, 2010) ("A dragnet clause is defined as 'one which, on its face, purports to include within the coverage of the deed of trust all present and future indebtedness owed by the borrower to the lender in addition to the specific debt being secured by the deed of trust.'" (quoting *In*

---

[1] During an offer of proof following the trial court's ruling at the close of trial, Mr. Hill stated that at the time of the foreclosure sale, the 8.17-acre tract consisted of 29 lots with one of those lots having a cabin on it. He stated that the "infrastructure" of "water, sewer, cable and electrical" had been added and that the 8.17-acre tract had also been improved by the construction of two swimming pools and a pool house. The record contains no other indication of improvements to the 8.17-acre tract encumbered by the Rainbow Note.

*re Lemka*, 201 B.R. 765, 767 n.2 (Bankr. E.D. Tenn. 1996))). The dragnet clause included in the most recently modified version of Note 4 provides in pertinent part:

> [I]n the event of a default under any of the Agreements or any other obligation of Borrowers . . . then any one of the same shall be a material default hereunder, and this Note and any other indebtedness due the Bank by Borrowers shall immediately become due and payable at the option [o]f the Bank without notice, or demand of any kind, which are hereby waived.

An essentially identical dragnet clause is included in the most recently modified version of each of the promissory notes at issue.

Appellants and the Owners Association responded to the complaint by filing a motion to dismiss and subsequent corrected motion to dismiss, asserting, *inter alia*, that the Bank had improperly split its claims because among the claims included in the instant complaint were ones related to cabins and tracts of real property that were the partial subject of litigation pending in the appellate process at the time. As to Mr. Huskey, the Bank had clarified in its complaint that it had named Mr. Huskey as a defendant "solely in his capacity as the successor trustee" under the deed of trust for the 9.27-acre tract securing Note 4 upon an "Appointment of Successor Trustee" executed by the Bank on March 15, 2016, and recorded with the Register of Deeds on the next day. Mr. Huskey did not participate in the filing of the motion to dismiss. The Bank filed a response on August 3, 2016, objecting to the corrected motion to dismiss.

In the related action involving Appellants and the Bank, this Court entered a decision on December 28, 2016. *See Rainbow Ridge Resort, LLC v. Branch Banking & Trust Co.*, 525 S.W.3d 252 (Tenn. Ct. App. Dec. 28, 2016), *perm. app. denied* (Tenn. May 18, 2017) ("*Rainbow Ridge Resort*"). In *Rainbow Ridge Resort*, this Court summarized the underlying facts, procedural history, and ultimate affirmance of the trial court's dismissal of that action, which had been initiated by Appellants against the Bank, as follows:

> The facts in this case implicate the doctrine of res judicata. In 2012, a real estate development limited liability company and its members filed suit in the Sevier County Circuit Court against their mortgage lender, Branch Banking and Trust Company (the bank). In that action, the developers alleged, *inter alia*, that the bank was guilty of fraud, breach of contract, and unjust enrichment. That suit involved four separate parcels of real property. While the case in circuit court was pending, the bank sued three individuals in the Sevier County Chancery Court, seeking a declaratory judgment regarding the priority of a security interest in one of

4

the parcels of property at issue in the circuit court case. In the chancery court action, the bank joined the developers as parties. In response, the developers filed a counterclaim in which they repeated allegations included in the circuit court case and asserted other claims derived from the same set of facts. The two cases were later consolidated. In each case, the bank filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim. The court heard both motions at a single hearing. On June 8, 2015, the trial court filed two orders—one in the circuit court suit and one by interchange in the chancery court action—granting the bank's motions. The developers appealed only the circuit court order. Unchallenged, the chancery court order became final. The bank later moved to dismiss this appeal, arguing that the doctrine of res judicata barred further litigation. We deferred a ruling on the bank's motion. We now hold that the motion has merit. Accordingly, we affirm the trial court's judgment dismissing this case. We do so based upon the doctrine of res judicata.

*Id.* at 254-55.

Meanwhile in the case at bar, the trial court entered an order on November 4, 2016, approving the voluntary dismissal without prejudice of the Bank's claim against the State and removing the State as a defendant. The Bank filed a "First Amended Complaint" on December 6, 2016, again naming as defendants the Hills, Rainbow Ridge, Mr. Huskey, and the Owners Association, while also adding multiple additional defendants. In its first amended complaint, the Bank sought deficiency judgments against the various defendants, averring that since the filing of the initial complaint, foreclosure sales had taken place pursuant to the deeds of trust securing the promissory notes and guaranty agreements at issue.

On December 30, 2016, Appellants and the Owners Association filed an answer to the first amended complaint, denying or stating that they had insufficient knowledge to admit or deny all substantive allegations and raising eight affirmative defenses, including (1) principles of "accord and satisfaction, assumption of risk, contributory negligence, estoppel, fraud, illegality, setoff, and/or waiver"; (2) lack of ripeness for review due to the pending appellate action; (3) unclean hands; (4) fraud "in materially misrepresenting that the time for performance of the Notes would continue to be granted as it had historically been"; (5) breach of implied covenant of good faith and fair dealing; (6) failure to mitigate alleged damages; (7) breach of fiduciary duty; and (8) equitable estoppel.[2] The Bank filed a motion to strike these eight affirmative defenses on January

---

[2] Mr. Huskey did not participate in the filing of the answer to the amended complaint.

5

26, 2017, pursuant to Tennessee Rule of Civil Procedure 12.06.[3]  Appellants subsequently filed a response, and the Bank filed a supplement to the motion.

On January 27, 2017, the Bank filed a notice of voluntary dismissal without prejudice as to all defendants except the Hills, Rainbow Ridge, Mr. Huskey, and one other individual, Carroll Harrellson.  Upon Mr. Harrellson's subsequent crossclaim, counterclaim, and third-party claim, the Bank and Mr. Harrellson reached an agreement as to Mr. Harrellson's real property, memorialized in an order entered, as amended, by the trial court on November 14, 2017, with the Bank voluntarily dismissing its claim against Mr. Harrellson.  Within this order, the trial court, finding that Rainbow Ridge had failed to file a responsive pleading, also granted default judgment to Mr. Harrellson on his third-party claim against Rainbow Ridge to quiet title and reform instruments related to Mr. Harrellson's real property.[4]

In the case at bar, the Bank filed a motion for partial summary judgment against the remaining defendants on June 1, 2017, requesting that the trial court enter a judgment as to the liability of the Hills for the unpaid principal balances on the Hill Notes and the liability of the Hills and Rainbow Ridge for the unpaid principal balance on the Rainbow Note.  In addition, the Bank requested that the trial court find Appellants liable for corresponding accrued interest, bank charges, late fees, and reasonable attorney's fees.

In an order entered July 18, 2017, the trial court granted the Bank's motion for partial summary judgment, finding Appellants to be liable as alleged by the Bank.  Specifically, the court found:

> Defendants Wayne R. Hill and Cornelia D. Hill, as the makers thereof, are jointly and severally liable for the payment of all amounts owed under Note 4, Note 9, Note 14 and Note 15, as the same are defined in the plaintiff's first amended complaint, (a) due to the failure of defendants Wayne R. Hill and Cornelia D. Hill to pay Note 4, Note 9, Note 14 and Note 15 upon their maturity, and (b) due to the failure of defendants Wayne R. Hill and Cornelia D. Hill to pay the taxes on real estate encumbered by

---

[3] Tennessee Rule of Civil Procedure 12.06 provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within thirty (30) days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

[4] Mr. Harrellson is not a party to this appeal.

6

deeds of trust executed by defendants Wayne R. Hill and Cornelia D. Hill to secure the payment of Note 4, Note 9, Note 14 and Note 15.

Defendant Rainbow Ridge Resort, LLC, as the maker thereof, and defendants Wayne R. Hill and Cornelia D. Hill, as the guarantors thereof, are jointly and severally liable for the payment of all amounts owed under the Rainbow Note, as the same is defined in the [Bank's] first amended complaint, (a) due to the failure of defendants Rainbow Ridge Resort, LLC, Wayne R. Hill and Cornelia D. Hill to pay the Rainbow Note upon its maturity, (b) due to the failure of defendant Rainbow Ridge Resort, LLC to pay the taxes on real estate encumbered by a deed of trust executed by defendant Rainbow Ridge Resort, LLC to secure the payment of the Rainbow Note, and (c) due to the failure of defendants Wayne R. Hill and Cornelia D. Hill to pay the taxes on real estate encumbered by a deed of trust executed by defendants Wayne R. Hill and Cornelia D. Hill to secure the payment of the Rainbow Note.

(Paragraph numbering omitted.) Also on July 18, 2017, following a hearing, the trial court entered a separate order granting the Bank's motion to strike Appellants' and the Owners Association's eight affirmative defenses upon finding the Bank's motion to be "well taken."

The trial court conducted a bench trial regarding the deficiency claims on November 14, 2017. As part of its proof during trial, the Bank presented testimony from W. Morris Kizer regarding the foreclosure sales related to the requested deficiency judgments, as well as the attorney's fees incurred by the Bank. The Bank also presented testimony from a senior vice president and custodian of records for the promissory notes at issue, Mark Leslie Thomas, regarding the balances owed on the notes and amounts received from the foreclosure sales. On appeal, Appellants assert that the trial court erred by denying their request to cross-examine the Bank's witnesses regarding the adequacy of foreclosure sales prices and the foreclosure process.

The trial court found that Appellants were precluded from a line of questioning regarding defenses they had not pled. Specifically, the court found that Appellants had not pled inadequacy of the foreclosure sales prices under the deficiency statute codified at Tennessee Code Annotated § 35-5-118 (2015). The court also found that Appellants had not pled "commercial unreasonableness" of the foreclosure sales under a statute cited by Appellants' counsel that the court found inapplicable, Tennessee Code Annotated § 47-9-610 (2013). At the conclusion of the Bank's proof, Appellants moved for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02. The trial court denied the motion.

7

At the close of all proof and argument, the trial court announced its judgment awarding a total of $1,180,223.77 to the Bank against the Hills and a total of $144,848.30 to the Bank against Rainbow Ridge. Without the trial court judge present, Appellants then made an offer of proof concerning the alleged condition of the subject properties, improvements existing on the properties at the time of the foreclosure sales, and the manner in which the sales were conducted. Appellants also offered proposed testimony from the Hills to the effect that they allegedly had not received proper notice of the May 13, 2016 foreclosure sales. Appellants' counsel stated that if allowed to, counsel would have questioned W. Morris Kizer and Mr. Thomas regarding whether the properties sold at foreclosure had been appraised prior to sale or submitted to market valuation or studies of marketability, noting Appellants' counsel's anticipation that the answers would have been in the negative.

On December 1, 2017, the trial court entered its "Order and Judgment," finding Mr. Hill and Ms. Hill "jointly and severally liable" to the Bank "in the total amount of $1,180,223.77 on their notes and guaranty agreements and for [the Bank's] attorney's fees" and finding Rainbow Ridge "liable to the [Bank] in the amount of $144,848.30 on its note." Upon the Bank's announcement of voluntary dismissal and pursuant to Tennessee Rule of Civil Procedure 41.01, the trial court dismissed, without prejudice, the Bank's action for judicial foreclosure of the 9.27-acre tract encumbered by Note 4 and the Bank's action against Mr. Huskey.

On December 15, 2017, Appellants filed a motion to vacate the order and judgment, alleging, *inter alia*, that the trial court had violated their due process rights when the court did not allow testimony concerning the adequacy of the foreclosure sales prices and the commercial reasonableness of the foreclosure sales. Appellants thereby argued that the judgment was void, pursuant to Tennessee Rule of Civil Procedure 60.02(3), and that relief from the judgment was justified pursuant to Rule 60.02(5). The Bank filed a response to the motion on January 4, 2018, and Appellants filed a supplement to the motion the next day. In their supplemented motion, Appellants also requested a new trial, relying on Tennessee Rule of Civil Procedure 59.07. Following a hearing conducted on January 5, 2018, the trial court, treating the motion to vacate as a "[m]otion for relief and for a new trial under TRCP 59," denied the motion in an order entered January 16, 2018. Appellants timely appealed.

## II. Issues Presented

Appellants present two issues on appeal, which we have restated slightly as follows:

8

1. Whether the trial court erred by denying Appellants' motion to vacate the December 1, 2017 order without evidence of any commercially reasonable disposition of the collateral as a prerequisite to seeking a deficiency judgment.

2. Whether the trial court erred by denying Appellants' purportedly fundamental right to cross-examine the Bank's witnesses after the Bank "opened the door" as to foreclosure sales prices.

III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). Questions of construction involving the Tennessee Rules of Civil Procedure are likewise reviewed *de novo* with no presumption of correctness. *See Green v. Moore*, 101 S.W.3d 415, 418 (Tenn. 2003). Our Supreme Court has summarized the principles involved in statutory construction as follows:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is

9

ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

As to evidentiary questions, "admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion." *Austin v. City of Memphis*, 684 S.W.2d 624, 634 (Tenn. Ct. App. 1984), *perm. app. denied* (Tenn. Dec. 31, 1984); *see also In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted).

With respect to a motion to alter or amend, this Court has previously explained that "[w]e review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion." *Robinson v. Currey*, 153 S.W.3d 32, 38 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Dec. 6, 2004) (quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003)). Likewise, "[i]n general, we review a trial court's ruling on a request for relief from a final judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure . . . pursuant to the abuse of discretion standard." *Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015).

IV. Tennessee Code Annotated § 35-5-118

Appellants contend that the trial court erred by denying their motion to vacate the December 1, 2017 order and deficiency judgment because the Bank "failed to satisfy its burden of proof in order to be entitled to a deficiency judgment." Specifically, Appellants argue that the Bank failed to prove that it conducted a "commercially reasonable" foreclosure sale of the real property at issue because it allegedly did not "obtain an independent appraisal of the properties" and did not "provide notice of

disposition of the collateral to Appellants." Acknowledging that they failed to raise in their pleadings the defense of inadequacy of the foreclosure sales prices pursuant to Tennessee Code Annotated § 35-5-118, Appellants assert that the trial court "was bound to apply section 35-5-118 regardless of whether Appellants raised a defense based on this Statute." The Bank contends that the trial court properly found that by failing to raise an affirmative defense of inadequacy of the foreclosure sales prices in their pleadings, Appellants had waived the defense at trial. Upon thorough review of the record and applicable authorities, we determine that the trial court properly applied Tennessee Code Annotated § 35-5-118 and in so doing, did not err by finding that Appellants had waived the defense of inadequacy of the foreclosure sales prices.

It is well settled in Tennessee that "the holder of a note has the right to pursue foreclosure of the corresponding security instrument." *GreenBank v. Sterling Ventures, LLC*, No. M2012-01312-COA-R3-CV, 2012 WL 6115015, at *5 (Tenn. Ct. App. Dec. 7, 2012). As this Court has explained:

> [A] mortgagee who bids in the full amount of the debt at the foreclosure sale accepts the property itself in full payment of the underlying debt, while a mortgagee who bids in less than the full amount of the debt retains its status as a creditor with regard to the deficiency.

*First Inv. Co. v. Allstate Ins. Co.*, 917 S.W.2d 229, 231 (Tenn. Ct. App. 1994), *perm. app. denied* (Tenn. Oct. 2, 1995); *see also GreenBank*, 2012 WL 6115015, at *5.

Enacted by the General Assembly in 2010, Tennessee Code Annotated § 35-5-118 provides in pertinent part:

(a)     In an action brought by a creditor to recover a balance still owing on an indebtedness after a trustee's or foreclosure sale of real property secured by a deed of trust or mortgage, the creditor shall be entitled to a deficiency judgment in an amount sufficient to satisfy fully the indebtedness.

(b)     In all such actions, absent a showing of fraud, collusion, misconduct, or irregularity in the sale process, the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale. The creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale.

(c) To overcome the presumption set forth in subsection (b), the debtor must prove by a preponderance of the evidence that the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale. If the debtor overcomes the presumption, the deficiency shall be the total amount of the indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale as determined by the court.

Concerning the effect of the 2010 enactment of Tennessee Code Annotated § 35-5-118, this Court has explained:

> The Tennessee General Assembly enacted Tennessee Code Annotated § 35-5-118, effective September 1, 2010, modifying what had been the debtor's standard for rebutting the presumption from "grossly inadequate" to "materially less" in comparison to the fair market value. *See GreenBank*, 2012 WL 6115015 at *6 (citing 2010 Pub. Acts, ch. 1001 § 2); *see also Duke v. Daniels*, 660 S.W.2d 793, 794-95 (Tenn. Ct. App. 1983) (explaining that under the standard in effect prior to 2010, "[w]here such [foreclosure] sale is properly held, the sale price is conclusively presumed to be the value of the property sold; unless, the sale price is so grossly inadequate to shock the conscience of the Court.").

*Eastman Credit Union v. Bennett*, No. E2015-01339-COA-R3-CV, 2016 WL 1276275, at *5 (Tenn. Ct. App. Mar. 31, 2016).

Regarding application of Tennessee Code Annotated § 35-5-118, this Court has explained:

> This statute, which applies to all trustee or foreclosure sales of real property secured by a deed of trust for which the first foreclosure publication is given on or after September 1, 2010, provides that, absent fraud, collusion, misconduct, or irregularity in the foreclosure sale, "the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale." Tenn. Code Ann. § 35-5-118(b). In such cases, "[t]he creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale." *Id.* If a defendant raises inadequacy of the foreclosure price as a defense to the deficiency claim, the defendant "must prove by a preponderance of the evidence that the property sold for an

amount materially less than the fair market value of property at the time of the foreclosure sale." Tenn. Code Ann. § 35-5-118(c); *see also Lost Mountain Dev. Co. v. King*, No. M2004-02663-COA-R3-CV, 2006 WL 3740791, at *8 (Tenn. Ct. App. Dec. 19, 2006) ("[T]he issue in deficiency actions is the fair market value of the property at the time it was sold.").

*Commerce Union Bank, Brentwood, Tenn. v. Bush*, 512 S.W.3d 217, 232-33 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Nov. 16, 2016) (emphasis added).

In the case at bar, Appellants have not expressly alleged fraud, collusion, misconduct, or irregularity in the foreclosure sale process pursuant to Tennessee Code Annotated § 35-5-118(b). Appellants do not dispute that pursuant to § 35-5-118(b), the Bank is "entitled to a rebuttable prima facie presumption that the sale price[s] of the propert[ies] [are] equal to the fair market value of the propert[ies] at the time of the sale." Instead, Appellants assert that they were denied the opportunity to overcome the statutory presumption when the trial court sustained the Bank's objection at trial to questions concerning whether the properties at issue sold for an amount materially less than their fair market value at the time of the foreclosure sales. *See* Tenn. Code Ann. § 35-5-118(c).

In its final order, the trial court explained its decision to deny Appellants' request to cross-examine witnesses and introduce proof regarding the adequacy of the foreclosure sales prices as follows:

> [Appellants] sought to cross examine the [Bank's] witnesses concerning the adequacy of the foreclosure sales price and sought to introduce other evidence concerning the adequacy of the foreclosure sales price, citing T.C.A. § 47-9-610 et seq. and T.C.A. § 35-5-118 as the basis therefor. The Court sustained the [Bank's] objections to [Appellants'] cross examination of the [Bank's] witnesses on such issue and [Appellants'] introduction of such evidence on the basis that in their answer to the [Bank's] First Amended Complaint, [Appellants] had not pled or asserted the inadequacy of the foreclosure sales price and had not pled or asserted T.C.A. § 47-9-610 et seq. and T.C.A. § 35-5-118, or otherwise placed those matters at issue, and on the further basis that T.C.A. § 47-9-610 et seq. has no application to the facts of the case. The Court directed that an offer of proof could be made by [Appellants'] counsel after the Court ruled.

The trial court thereby found that the defense of inadequacy of the foreclosure sales prices was an affirmative defense that Appellants had waived by failing to plead the defense prior to trial. Under the procedural posture and facts of this case, we agree.

Regarding affirmative defenses, Tennessee Rule of Civil Procedure 8.03 provides:

In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and <u>any other matter constituting an affirmative defense</u>. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

(Emphasis added.) "Failure to ple[a]d an affirmative defense generally results in a waiver of the defense." *ADT Sec. Servs., Inc. v. Johnson*, 329 S.W.3d 769, 778 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. June 17, 2010).

Tennessee Code Annotated § 35-5-118 does not expressly set forth inadequacy of the foreclosure sales price as an affirmative defense. However, we determine it to be a "matter constituting an affirmative defense," *see* Tenn. R. Civ. P. 8.03, according to the "most commonly understood definition" of an affirmative defense in a pleading of "[a] matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it," *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 6 (Tenn. 2008), *overruled on other grounds by Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015) (quoting BLACK'S LAW DICTIONARY 60 (6th ed. 1990)). As our Supreme Court further noted in *Hannan*, "an affirmative defense is 'a traditional way for the defendant to defeat the plaintiff's claim by carrying its own burden of proof.'" *Hannan*, 270 S.W.3d at 7 n.3 (quoting Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping about Summary Judgment in Tennessee*, 69 Tenn. L Rev. 175, 189-90, 208 (2001)).

Pursuant to Tennessee Code Annotated § 35-5-118(c), the defendant debtor must carry his or her own burden of proof by a preponderance of the evidence to demonstrate that "the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale." Although meeting this burden does not negate the plaintiff's deficiency claim, it has the potential of lowering significantly, or even eliminating entirely, the amount of the deficiency judgment awarded by rendering

14

the fair market value of the property to be that "determined by the court" rather than an amount equal to the foreclosure sales price. *See* Tenn. Code Ann. § 35-5-118(c).

We note that prior to the 2010 enactment of Tennessee Code Annotated § 35-5-118, this Court likened the "gross inadequacy" standard then in effect to overcome the presumption that the foreclosure price equaled fair market value to an allegation of fraud committed during the foreclosure proceedings. *Duke v. Daniels*, 660 S.W.2d 793, 794-95 (Tenn. Ct. App. 1983), *perm. app. denied* (Tenn. Nov. 28, 1983) ("Gross inadequacy is merely a method by which one attempts to prove fraud with the aid of a presumption."). The *Duke* Court determined that such an allegation constituted an affirmative defense that must be pled. *Id.* The question at hand in this case, which is a matter of first impression in interpreting Tennessee Code Annotated § 35-5-118, is whether a debtor's allegation of an inadequate foreclosure sales price under the debtor's statutory standard of "materially less" also constitutes an affirmative defense.

Concerning the "materially less" standard, this Court explained in *Eastman Credit Union* in pertinent part:

> Tennessee Code Annotated § 35-5-118 does not provide a definition of the "materially less" standard. *See In re Estate of Tanner*, 295 S.W.3d at 614. ("It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources."). This Court has previously examined the legislative history surrounding the enactment of Tennessee Code Annotated § 35-5-118. *See GreenBank*, 2012 WL 6115015 at *6-9 (citing 2010 Pub. Acts, ch. 1001 § 2). This Court summarized in pertinent part:
>
> > It is clear from the foregoing discussion that the Legislative intent in adopting the "materially less" standard was not to lessen the burden on the debtor so much as to negate the presumption that the sale price represents the fair market value. Rather, the term "materially less" still represents "a pretty substantial difference." As [House] Representative [Vance] Dennis further explains: "It's a very difficult burden for the debtor to overcome. . . . You have to show a "strong" difference, a "material" difference."
>
> *See GreenBank*, 2012 WL 6115015 at *9.
>
> In interpreting the "materially less" standard, this Court "has refrained from establishing a 'bright-line percentage, above or below which

15

the statutory presumption is rebutted.'" *FirstBank v. Horizon Capital Partners, LLC*, No. E2013-00686-COA-R3-CV, 2014 WL 407908 at *3 (Tenn. Ct. App. Feb. 3, 2014) (quoting *GreenBank*, 2012 WL 6115015 at *10-11)). "Instead, this court has opted to consider the percentage difference along with the condition of the property and any other factors that may provide information concerning the marketability of the property and the surrounding area." *FirstBank*, 2014 WL 407908 at *3.

*Eastman Credit Union*, 2016 WL 1276275, at *9-10.

Appellants in this case have not cited and our research has found no Tennessee appellate decisions applying Tennessee Code Annotated § 35-5-118 in which the defense of inadequacy of the foreclosure sales price was considered without the defendant debtor having first pled the defense or the appellate court's having determined that the defense was tried by implied consent. *See, e.g., Commerce Union Bank*, 512 S.W.3d at 221 (defendants raised inadequacy of the foreclosure sales price in their answer to the complaint); *Commercial Bank, Inc. v. Lacy*, 371 S.W.3d 121, 123 (Tenn. Ct. App. 2012), *perm. app. denied* (Tenn. June 20, 2012) (defendant raised inadequacy of the foreclosure sales price as a "defense[] to liability" in his response to the plaintiff's summary judgment motion); *Eastman Credit Union*, 2016 WL 1276275, at *1 ("The defendant debtor asserted as an affirmative defense [in his answer to the complaint] that the lender had purchased the property during a foreclosure sale for a sum materially less than the fair market value."); *Cutshaw v. Hensley*, No. E2014-01561-COA-R3-CV, 2015 WL 4557490, at *3 (Tenn. Ct. App. July 29, 2015) (determining that inadequacy of the foreclosure sales price had been tried by implied consent); *Capital Bank v. Brock*, No. E2013-01140-COA-R3-CV, 2014 WL 2993844, at *2 (Tenn. Ct. App. June 30, 2014) (defendants raised as "an affirmative defense" in their answer to the amended complaint that the plaintiff bank had "sold the Property . . . at foreclosure for an amount which it knew was less than its market value . . . ."); *Firstbank v. Horizon Capital Partners, LLC*, No. E2013-00686-COA-R3-CV, 2014 WL 407908, at *1 (Tenn. Ct. App. Feb. 3, 2014) (defendant raised inadequacy of the foreclosure sales price in an objection to the plaintiff's summary judgment motion).

Considering this Court's interpretation of a debtor's allegation of an inadequate foreclosure sales price under the previous standard as an affirmative defense, *see Duke*, 660 S.W.2d at 794-95; the legislative history surrounding the 2010 enactment of Tennessee Code Annotated § 35-5-118, *see GreenBank*, 2012 WL 6115015, at *9; the defendant's burden of proof to demonstrate inadequacy of the foreclosure sales price, *see Hannan*, 270 S.W.3d at 7 n.3; and consistent treatment in appellate analysis of a debtor's allegation concerning an inadequate foreclosure sales price as a defense to be raised by the debtor, *see, e.g., Commerce Union Bank*, 512 S.W.3d at 232, we hold that inadequacy

16

of the foreclosure sales price under Tennessee Code Annotated § 35-5-118 is an affirmative defense that either must be properly pled prior to trial or tried by implied consent.

Appellants argue that the Bank "opened the door" to testimony regarding the adequacy of the foreclosure sale prices when W. Morris Kizer testified during trial that he had personally seen the cabin on the property that was encumbered by Note 9. As Appellants acknowledged during trial and the Bank has asserted on appeal, "opening the door" is an evidentiary principle usually applied in the context of criminal proceedings. *See, e.g., State v. Kendricks,* 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996), *perm. app. denied* (Tenn. May 5, 1997) ("Irrespective of admissibility under Rule 609 [of Tennessee Rules of Evidence], a conviction may be used to contradict a witness who 'opens the door' and testifies on direct examination that he or she has never been convicted of a crime, or to counter some other facet of direct testimony.'" (quoting Cohen, Sheppeard & Paine, *Tennessee Law of Evidence* § 609.1 (3d ed. 1995))). We find Appellants' reliance on this principle as a means of introducing evidence that the trial court found irrelevant to the issues pled in a civil matter to be unavailing. *See* Tenn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

However, Appellants' argument in this vein may be interpreted as an assertion that the defense of inadequacy of the foreclosure sales prices was tried by implied consent. Tennessee Rule of Civil Procedure 15.02 creates an exception to the general rule that "[j]udgments awarded beyond the scope of the pleadings are void." *See Randolph v. Meduri,* 416 S.W.3d 378, 384 (Tenn. Ct. App. 2011). Rule 15.02 provides in pertinent part:

> Amendments to Conform to the Evidence.—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

In *Cutshaw*, which involved a deficiency action under Tennessee Code Annotated § 35-5-118, the plaintiff lenders argued that the defendant debtors "should be precluded from arguing that the foreclosure sale price was materially less than fair market value, because the [debtors] did not expressly make such an allegation in their answer or other pleading." *Cutshaw*, 2015 WL 4557490, at *3. Upon review, this Court determined that

"[t]he record reflect[ed] that both parties, and the trial court, understood that fair market value was at issue under the statute, and thus the issue was fairly tried by implied consent." *Id.* In contrast, upon careful review of the record in the instant action, we determine that the parties did not try the defense of inadequacy of the foreclosure sales prices by implied consent and that, based on the parties' pleadings, the trial court did not anticipate the adequacy of the foreclosure sales prices to be at issue during trial.

During Appellants' cross-examination of W. Morris Kizer, the following exchange occurred in relevant part:

| | |
|---|---|
| Appellants' Counsel:[5] | I would like you to go back to Exhibit 1, which was the summary of May 13th, 2016 foreclosure sales. I want to take these one at a time and ask you a series of questions about them, starting with what you've got reference[d] as Hill note nine. You said that was improved by a cabin? |
| W. Morris Kizer: | Well, the property encumbered to secure Hill note nine was improved by a cabin. |
| Appellants' Counsel: | All right. What was the condition of the cabin as of May 13th of 2016? |
| W. Morris Kizer: | I think the last time I saw the cabin prior to the foreclosure sale would have been several months before that. |
| Appellants' Counsel: | And what was the condition of it at that time? |
| W. Morris Kizer: | I did not go in the interior. The exterior appeared fine. As a matter of fact, there were rental guests there, it appeared, people moving their bags in and out. |
| Appellants' Counsel: | So it was furnished? |
| W. Morris Kizer: | There were people in there. I assume rental people. |

[5] Appellants' counsel at trial was William Jeff Barnes, *pro hoc vice*, of Florida and Andrew Farmer of Sevierville. Mr. Barnes conducted this cross-examination.

| | |
|---|---|
| Appellants' Counsel: | Did you see those people in there? |
| W. Morris Kizer: | I saw them moving in and out of the building. |
| Appellants' Counsel: | All right. And you said – I'm sorry, I didn't mean to interrupt you. You said this visual inspection was done a few months before the foreclosure sales? |
| W. Morris Kizer: | Yes, sir, I would say three months before. |
| Appellants' Counsel: | All right. So basically March, springtime? |
| W. Morris Kizer: | Early spring, I would say. |
| Appellants' Counsel: | All right. Was anybody with you when you did this visual inspection? |
| W. Morris Kizer: | No. |
| Appellants' Counsel: | Did you actually go into the cabin? |
| W. Morris Kizer: | No, sir. |
| Appellants' Counsel: | All right. Do you know if there was any kind of appraisal or market valuation done of that cabin at any time by [the Bank] or your office? |
| The Bank's Counsel:[6] | Your Honor, I object to this line of questioning insofar as the defendants have not properly raised and pled the affirmative defense predicated on TCA 35-5-118 or for that matter the one that opposing counsel referred to at the beginning of this proceeding I found at TCA 47-9-610. So the objection would be based on relevance. |

---

[6] Counsel acting on behalf of the Bank was John M. Kizer.

| | |
|---|---|
| Appellants' Counsel: | Well, Judge, we're kind of putting the cart before the horse with that objection. We don't know until today what Mr. [W. Morris] Kizer was going to testify to, and since he has testified at length with regard to what these properties sold for, and they've raised the issue of what these properties sold for, I think on cross-examination I should be allowed to ask him some questions. |
| Trial Court: | Counsel, if you're going to raise an issue of insufficiency of the foreclosure sale of personal property under Article 9 of the Uniform Commercial Code for real property under Title 35, you've got to plead the statute. You've got to put the other side on notice that you've relied upon the statutes. The Rules of Civil Procedure require you to do that. |
| Appellants' Counsel: | But again, Judge, what we're talking about here is we don't – I didn't know before today – and I don't like to not plead things in good faith. I don't like to plead a statutory defense that I don't have a good faith basis for. I've – there were no depositions taken in this case. Mr. [W. Morris] Kizer has testified today for the first time, for over an hour, about these properties and he testified that he prepared the trust deeds. He has just testified he did an inspection. They raised this issue. I think I'm entitled to cross-examine him on that.

If they want to come back later in some kind of motion or memo or whatever and say that, you know, that wouldn't apply because it wasn't raised as a defense, that's fine. But to cut off cross-examination of issues that they've raised in their direct testimony I think would be a denial of due process. |
| The Bank's Counsel: | Your Honor, respectfully – |

| | |
|---|---|
| Trial Court: | The objection is sustained. If you're going to take the position that a foreclosure sale or a sale involving the disposal of collateral under Article 9 was an insufficient sale, you've got to raise that, you've got to plead it. |
| | You can't come in on the day of trial – I understand counsel's point that, look, you don't necessarily know exactly everything that's going to come up, or you may not know everything that's going to come up in a trial, but the matter of the sufficiency of the foreclosure sale is something simply that has to be pled. It has to be pled in order to be relied upon. It was not pled here, and so the objection is sustained. |
| Appellants' Counsel: | Then I would make a ore tenus motion to amend our answer to add those two statutory defenses, because, again, Mr. [W. Morris] Kizer has just testified, he has just raised these issues. He's just put them into evidence. |
| Trial Court: | Counsel, what do you have to say? |
| The Bank's Counsel: | Well, your Honor, I believe that such an amendment would be futile and would only further prolong or delay these proceedings that have been set for trial for this date for a while now, and so I would oppose such a – |
| Trial Court: | The motion is overruled. This lawsuit was filed in March of 2016. |
| Appellants' Counsel: | Right. |
| Trial Court: | It has been pending since March of 2016. The fact that depositions were not taken, discovery was not taken, that's a matter of – they could have been taken. Had any party to the proceedings wanted to take them, they certainly |

| | |
|---|---|
| | could have been taken. There was extensive written discovery. |
| Appellants' Counsel: | Well, your Honor, with all due respect, there was extensive written discovery about whether or not my clients signed the notes and the deed of trust and whether the foreclosures happened, that's where the requests for admissions were all grounded upon. There was nothing in those admissions whatsoever with regard to the issue of whether or not there was the proper disposition of this collateral, whether it was under Chapter 35 or under Chapter 47. |
| Trial Court: | Motion to amend is overruled. |
| * * * | |
| Appellants' Counsel: | Your Honor, in light of what you just said, it's our position that this was not an unanticipated series of issues. [The Bank] disposed of the collateral. They should be familiar with the law in that, whether under Chapter 35 or Chapter 47, so they can't certainly claim surprise. So what I would like to do is I'd like to make an offer of proof for the record as to what I would have asked had I been allowed to ask it. |
| Trial Court: | You can do that, you certainly have that right, and you can do that, but that will come at the end of the day, not during the trial. |

Following W. Morris Kizer's testimony, Mr. Thomas testified, acknowledging during cross-examination that he was offering no testimony regarding appraisals or other valuations of the properties at issue.

Appellants essentially contend that they should have been allowed to pursue the defense of inadequacy of the foreclosure sales prices because the Bank should have been prepared for any defense allowed under Tennessee Code Annotated § 38-5-118. We disagree. Even assuming, *arguendo*, that the Bank knew or should reasonably have known that the adequacy of the foreclosure sales could become an issue at trial, we note

22

that the Bank vehemently objected to this line of questioning during trial and was at risk of having its case prejudiced if the trial court had allowed the defense without Appellants having given notice to the Bank prior to trial of their intent to assert the defense. *See Hiller v. Hailey*, 915 S.W.2d 800, 804 (Tenn. Ct. App. 1995), *perm. app. denied* (Tenn. Dec. 18, 1995) ("Generally speaking, trial by implied consent will be found where the party opposed to the amendment knew or should reasonably have known of the evidence relating to the new issue, <u>did not object to this evidence, and was not prejudiced thereby</u>." (quoting *Zack Cheek Builders, Inc. v. McLeod,* 597 S.W.2d 888, 890-91 (Tenn. 1980) (emphasis added))). We note also that the evidence presented by the Bank regarding the foreclosure sales prices was relevant to an established issue, that of demonstrating the sale price of each property for purposes of calculating the total deficiency judgment. *See Christmas Lumber Co., Inc. v.. Valiga,* 99 S.W.3d 585, 593 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Feb 18, 2003) ("Trial by implied consent is not shown by the presentation of evidence that is relevant to an unestablished issue when that evidence is also relevant to the established issue." (quoting *McLemore v. Powell,* 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997)).

Inasmuch as inadequacy of the foreclosure sales prices was not pled by Appellants or tried by implied consent in this action, we determine that the trial court did not abuse its discretion by finding the defense to be waived.[7] Therefore, we further determine that the trial court did not err by denying Appellants' motion to vacate the December 1, 2017 order without hearing further evidence regarding the adequacy of the foreclosure sales prices.

## V. Inapplicability of Tennessee Code Annotated § 47-9-610

Within their issues presented and argument on appeal that the foreclosure sale was "commercially unreasonable," Appellants consistently refer to the "collateral" foreclosed upon, exchanging this term for "properties" early in their argument and apparently referring to the cabins as collateral pursuant to their interpretation of Tennessee Code Annotated § 47-9-610. At trial, Appellants' counsel during opening statements relied in part on Tennessee Code Annotated § 47-9-610(a)-(b), arguing that this statute applied because the properties at issue were "commercial" and "investment" properties such that the "resort cabins" should be treated as collateral that was required by statute to be disposed of in a commercially reasonable manner after Appellants had defaulted on the related promissory notes.

---

[7] Appellants have not raised an issue on appeal regarding the trial court's denial of their oral motion, made during trial, to amend their answer to add the statutory defenses they attempted to raise at trial. We will therefore not address this ruling on appeal. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

Upon thorough review, we agree with the trial court's determination, made when Appellants' counsel first cited this statute during trial, that this statutory chapter involves secured transactions and does not apply to real property and the improvements, such as the resort cabins at issue here, conveyed as part of the transfer of real property. *See* Tenn. Code Ann. § 47-9-109(d)(11) (2013) (providing that barring exceptions not applicable here, "[t]his chapter does not apply to . . . the creation or transfer of an interest in or lien on real property . . . ."); *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 942 (Tenn. Ct. App. 1989), *perm. app. denied* (Tenn. June 26, 1989) ("As to the sale of realty, the Uniform Commercial Code requirements of a commercially reasonable sale have no application.").

In support of their position that the Uniform Commercial Code requirements apply, Appellants rely heavily on this Court's decision in *R & J of Tenn., Inc. v. Blankenship-Melton Real Estate, Inc.*, 166 S.W.3d 195 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. May 9, 2005), *abrogated on other grounds by Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896 (Tenn. 2007). However, the loan transaction at issue in *R & J*, which was "governed by Tennessee's version of Article 9 of the Uniform Commercial Code," involved the sale at foreclosure of collateral consisting of a boat, a tractor, a truck, and a mobile home. *R & J*, 166 S.W.3d at 198-200. At no point did the *R & J* Court consider real property, or the improvements constructed thereon, to be "collateral" under Tennessee's version of Article 9 of the Uniform Commercial Code. Appellants' reliance on *R & J* is misplaced.

Inasmuch as the Uniform Commercial Code requirements contained within Chapter 9 ("Secured Transactions") of Title 47 ("Commercial Instruments and Transactions") of Tennessee Code Annotated do not apply to transfers of real property, Appellants' reliance on this statutory section is unavailing. *See* Tenn. Code Ann. § 47-9-109(d)(11). Additionally, as the trial court noted, Appellants had not, prior to trial, raised a defense pursuant to Tennessee Code Annotated § 47-9-610 in their pleadings. *See* Tenn. R. Civ. P. 8.05(1) ("Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged.").[8] Appellants are not entitled to

_____

[8] We note that the Bank also argues on appeal that when Appellants failed to plead their affirmative defense pursuant to Tennessee Code Annotated § 35-5-118, they failed to comply with Tennessee Rule of Civil Procedure 8.05(1) by failing to allege a violation of § 35-5-118. We do not find this argument persuasive. We have held that Appellants were required to plead the affirmative defense of inadequacy of the foreclosure sales prices pursuant to Tennessee Code Annotated § 35-5-118 and Tennessee Rule of Civil Procedure 8.03. However, we do not determine that such an affirmative defense constitutes an allegation that the Bank "violated" any requirement set forth in the deficiency statute. *See, e.g.*, *City of Memphis v. Shelby Cty.*, 469 S.W.3d 531, 559 n.19 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. Aug. 14, 2015) (finding no violation of Rule 8.05 when the plaintiff "sought an interpretation and declaration

24

any relief under Tennessee Code Annotated § 47-9-610 or its neighboring statutory sections.

## VI. Appellants' Remaining Issue

As explained above, we have determined that the trial court did not abuse its discretion by finding that Appellants had waived what we hold to be the affirmative defense of inadequacy of the foreclosure sales prices pursuant to Tennessee Code Annotated § 35-5-118. We have also determined that the trial court did not err, by finding, as a matter of law, that Tennessee Code Annotated § 47-9-610 was inapplicable to this matter. We therefore conclude that Appellants' remaining issue concerning the trial court's denial of their request to further cross-examine the Bank's witnesses in an effort to establish their unpled affirmative defense is pretermitted as moot.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the judgment and collection of costs assessed below. The costs on appeal are assessed against the appellants, Wayne R. Hill, Cornelia D. Hill, and Rainbow Ridge Resort, LLC.

_____
THOMAS R. FRIERSON, II, JUDGE

---

of the [statute at issue] as it related to the parties' future rights and obligations" rather than alleging a "violation" of the statute). In contrast, Appellants did allege a violation of requirements set forth in Tennessee Code Annotated § 47-9-610 without having properly indicated their reliance on the statute pursuant to Rule 8.05(1).