**FILED**
**Dec 08, 2023**
**09:05 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **STUART BURRIS,** | ) | **Docket Nos. 2022-05-0597** |
| **Employee,** | ) | **2022-05-1262** |
| **v.** | ) | |
| **AMAZON.COM,** | ) | |
| **Employer,** | ) | |
| **and** | ) | |
| **WWL VEHICLE SERVICES** | ) | **State File Nos. 28454-2022** |
| **AMERICAS, INC.,** | ) | **18029-1262** |
| **Employer,** | ) | |
| **and** | ) | |
| **AMERICAN ZURICH INS. CO.,** | ) | |
| **Insurance Carrier,** | ) | |
| **and** | ) | **Judge Dale Tipps** |
| **LIBERTY MUTUAL INS. CO.,** | ) | |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an Expedited Hearing on November 30, 2023, on whether Mr. Burris is entitled to medical and temporary disability benefits. The two employers in this consolidated claim each contended that the other was responsible for his current symptoms. For the reasons below, the Court holds that Mr. Burris is likely to prevail at a hearing on the merits that he is entitled to medical treatment and temporary disability benefits in his claim against Amazon.

### History of Claim

Mr. Burris injured his low back on March 3, 2020, while working for WWL. He received authorized medical treatment, primarily through Dr. James Fish, who diagnosed a herniated lumbar disc with radiculopathy. After physical therapy and a steroid injection, Dr. Fish placed Mr. Burris at maximum medical improvement in July 2021, assigned a

1

permanent impairment rating, and returned him to full duty.[1]  Mr. Burris testified that his back was not the same after his injury, and it never felt like he was at maximum improvement.  Nonetheless, he continued to work at WWL until December 2021, when he began working for Amazon.

On January 19, 2022, he claimed he suffered a new injury to his low back while lifting a box at Amazon.  He testified that the pain this time was much worse and that, for the first time, his symptoms were in his right leg.  He was unable to walk for a time and had to use crutches for an even longer period.

Amazon denied the claim for insufficient notice but eventually accepted it, offered a panel, and authorized medical treatment with Dr. Michael McNamara in September.  Dr. McNamara diagnosed a herniated lumbar disc and ordered physical therapy.

Amazon terminated benefits in October, again asserting a notice defense, but later reversed that position and sent Mr. Burris back to Dr. McNamara in December.  It also sent a questionnaire to Dr. McNamara advising him of Mr. Burris's earlier back injury and asking whether he still believed that the "current back issues [were] more than 50.01% causally related to his alleged injury at Amazon."  Dr. McNamara responded that Mr. Burris "had a significant preexisting condition causing his problem, which was exacerbated, so he would be less than 50 percent from his injury."

Mr. Burris returned to Dr. Fish in March 2023.  After reviewing the most recent MRI from March 2022, Dr. Fish said Mr. Burris had sustained a new injury while working for Amazon.  He based this on the fact that the MRI showed a large, right-sided disc extrusion at the L5-S1 level, while earlier MRIs only showed moderate central protrusion.  Also, Mr. Burris's original left leg pain changed to significantly worse right-leg symptoms.

Amazon sent Dr. McNamara a copy of Dr. Fish's opinion and asked if Mr. Burris's current symptoms were "more than 50.01%" related to the Amazon incident or to his previous injury.  Dr. McNamara selected the "Previous work injury" response.

Both treating physicians gave depositions in this case.  Dr. Fish testified about Mr. Burris's first injury, explaining that he had a "moderate central disc protrusion at L5-S1."  He described a protrusion as where "the disc is pushing out of the disc space, but it's still contained by the ligament.  There's not a hole in the ligament where free disc is getting out."

Dr. Fish continued treating Mr. Burris after the maximum improvement date, but he characterized the symptoms as flare-ups of "the exact same symptoms" as before.  He explained that a second MRI in September 2021 showed no new disc herniations or

---

[1] The parties did not settle this claim.

protrusions. When Mr. Burris improved from this flare-up, Dr. Fish again discharged him to regular duty and restated his original maximum medical improvement date because of "[n]o change in pathology. No change in symptoms."

Regarding the Amazon incident, Dr. Fish said the March 2022 MRI showed that the original moderate protrusion and L5-S1 was now a large right-sided extrusion. He explained that the herniation "got worse and it also popped through the ligament at that level." Also, "[i]t's certainly compressing the right S1 nerve root." Dr. Fish described how this was consistent with Mr. Burris's description of the injury, as well as his current symptoms. He confirmed his opinion that Mr. Burris's symptoms are more than fifty percent causally related to the Amazon incident. He also said he would now recommend surgery, which Mr. Burris did not require before going to Amazon.

Dr. Fish disagreed with Dr. McNamara's causation opinion because "[t]here was a significant anatomic change to the disc pathology where the disc became much larger and extruded." He also pointed out that the new symptoms were right-sided, while they were on the left after the WWL injury.

Dr. McNamara, on the other hand, was asked during his deposition whether Mr. Burris's "disc herniation is more likely than not attributed to the previous employment." He said that it was present in the previous employment (WWL), and "he may or may not have made it worse." He explained that he had seen the first two MRIs but not the one from March 2022, and that he "can't really make a conclusive statement about [causation] until I see – until somebody sees that." However, he also said he believed this was "an exacerbation of the pre-existing condition." That is, the new symptoms might not be a new injury but an extension of the original injury.

Amazon also introduced a record review report from Dr. Tarek Elalayli, who disagreed with Dr. Fish. He did not find a "significant anatomical change" between the first MRI and the March 2022 film. Observing that "the patient clearly has a history of back and leg pain prior to the [Amazon] injury," Dr. Elalayli said that the Amazon injury is causally related less than fifty percent to Mr. Burris's disc herniation and symptoms.

Mr. Burris asked for an order to furnish medical treatment. He is still in pain and cannot work as he used to. He also requested temporary disability benefits, explaining that because he received no disability benefits while he was unable to work, he lost his car and is only able to find part-time work.

WWL contended that it provided all the benefits to which Mr. Burris was entitled because of his 2020 injury. It argued that his current symptoms and any entitlement to benefits are the result of his injury at Amazon.

Amazon denied that Mr. Burris suffered a compensable injury while working there. It insisted that his current problems relate primarily to his original injury at WWL.

## Findings of Fact and Conclusions of Law

### *Admissibility of Medical Proof*

Before reaching the merits of this case, the Court must address an evidentiary objection made by both employers. Each objected to medical evidence offered by the other, to the extent that Mr. Burris could rely on it to meet his burden of proof. That is, can the Court consider medical proof submitted by one employer if it is favorable to Mr. Burris's claim against the other employer, or must he offer it himself?

Counsel presented no authority for this argument but said that consolidation of cases under Rule 42.01 does not create one action or make those who are parties in one suit parties in the other. This is correct, but it does not address the question of whether evidence in a consolidated claim can only be relied upon by the party presenting it.

After careful consideration, the Court overrules the objections and holds that it can consider all admissible proof, regardless of which party submits it. To hold otherwise would defeat the purpose of consolidation, which Rule 42 states is "avoid[ing] unnecessary costs or delay." This judicial economy is achieved by allowing "a single trial of common issues." *Rainbow Ridge Resort, LLC v. Branch Banking & Tr. Co.,* 525 S.W.3d 252, 258 (Tenn. Ct. App. 2016).

The common issue here is the source of Mr. Burris's current symptoms, and each employer has offered medical evidence on that issue. Requiring multiple hearings for Mr. Burris to present the same medical proof is antithetical to the idea of judicial economy, as WWL observed when it moved to consolidate the claims. Ultimately, the Court is tasked with determining which, if either, of the employers are responsible for benefits. That is the fundamental reason for consolidating the claims: to weigh all available evidence instead of a piecemeal approach that could result in conflicting findings. Further, considering all admissible evidence, regardless of the source, seems consistent with *Smith v. Galloway Construction, LLC*, 2019 TN Wrk. Comp. App. Bd. LEXIS 70, at *9-10 (Oct. 28, 2019) (trial court properly admitted into evidence, over employer's objection, medical records filed by the employer, where the employee failed to file any documentation other than his own affidavit to support his claim.).

### *Standard Applied and Medical Causation*

To grant Mr. Burris's requests, he must prove he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2023); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

4

The first element Mr. Burris must prove is that his alleged injury arose primarily out of and in the course and scope of his employment. He must show "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(12)(A)-(D).

Applying these principles to the facts of this case, the central issue is whether Mr. Burris is likely to prove that either of the work incidents was the primary cause of his current injuries. WWL relied on the testimony of Dr. Fish, who concluded that the Amazon injury was primarily responsible. Based on the opinions of Drs. McNamara and Elalayli, Amazon disagreed.

As a starting point, Dr. Fish and Dr. McNamara are both authorized panel physicians whose causation opinions are presumed correct. Tenn. Code. Ann. § 50-6-102(12)(E). Therefore, Dr. Fish's opinion that Mr. Burris's injury at Amazon was the primary cause of his current symptoms is presumed correct. The same is true of Dr. McNamara's opinion that the new symptoms might be an extension of the original injury.

The question then is, did either employer rebut any of these presumptions? If so, which of the three doctors' opinions is most convincing?

In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Brees v. Escape Day Spa & Salon,* 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015).

Beginning with the first factor, the doctors' qualifications were not emphasized or challenged during the hearing. With little information concerning their respective qualifications, the Court does not find any determinative differences among the doctors.

As to the other factors, Dr. Fish has treated Mr. Burris for over three years, beginning with his first injury at WWL. Since then, he has seen Mr. Burris many times and observed his condition, both before and after the Amazon injury. Dr. McNamara, on the other hand, saw Mr. Burris twice, the first time eight months after the Amazon incident. Dr. Elalayli never met or examined Mr. Burris.

The Court finds that Dr. Fish was more familiar with Mr. Burris, his preexisting condition, and the progress of his symptoms. Thus, the "circumstances of examination" factor favors Dr. Fish. Case law generally supports this conclusion. "It seems reasonable

5

that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991); *see also Smith v. TrustPoint Hosp., LLC,* 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 6, 2021) (trial court did not err in accepting the authorized treating physician's opinion over that of another expert, where the authorized physician had the benefit of seeing the employee's condition during surgery, which confirmed his pre-operative diagnoses, and where the authorized physician "followed Employee as a patient and saw her lack of progress with conservative care firsthand.").

The information available to the doctors was not identical, either. Dr. McNamara initially thought that Mr. Burris's problems were primarily the result of his work at WWL. He later testified they could be an exacerbation of a preexisting injury, although he also said Mr. Burris "may or may not have made it worse." More importantly, he candidly acknowledged he lacked important information, the third MRI. Dr. McNamara said he could not "really make a conclusive statement about [causation] until I see – until somebody sees that." This equivocal testimony does not rise to the level of a reliable causation opinion.

Dr. Elalayli said he reviewed the third MRI, but he disagreed with Dr. Fish's interpretation of it. However, he did not explain why Mr. Burris's symptoms switched to a different leg and increased to the point where he had great difficulty walking. Dr. Fish's explanation of the MRI results is more persuasive because his interpretation coincides with his contemporaneous observation of Mr. Burris's symptoms, as well as his testimony that those symptoms were consistent with the large right-sided disc extrusion he saw on the films.

Put simply, Dr. Fish explained convincingly why he believes the Amazon incident caused a new, or at least significantly worsened, disc injury at the L5-S1 level, a "significant anatomic change to the disc pathology." Additionally, Mr. Burris's testimony that he experienced new, different, and more intense symptoms after the Amazon injury supports the conclusion that the condition described by Dr. Fish was caused by that work accident. *See Limberakis v. Pro-Tech Sec., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017) ("[A]n employee's assessment as to his own physical condition is competent testimony that is not to be disregarded."). In sum, the opinions of Drs. McNamara and Elalayli do not outweigh Dr. Fish's opinion and its presumption of correctness.

For these reasons, the Court holds Mr. Burris is likely to prove at trial that his current symptoms arose primarily out of the January 19, 2022 lifting accident at Amazon. Therefore, Amazon must approve continuing treatment with Mr. Burris's authorized panel physician, Dr. McNamara, including, if he still feels it necessary, the MRI and potential surgery mentioned in his last medical note.

*Temporary Disability Benefits*

To receive temporary total disability benefits, Mr. Burris must prove (1) he became disabled from working due to a compensable injury; (2) a causal connection between his injury and his inability to work; and (3) his period of disability. For temporary partial disability benefits, He must show that his treating physician returned him to work with restrictions that Amazon either could not or would not accommodate. *See Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7, 8 (Dec. 11, 2015).

Mr. Burris did not see Dr. McNamara until September 7, 2022, nine months after his injury. He testified in his deposition that he left his job at Amazon because he was severely limited by his injury, which suggests he might eventually be entitled to temporary disability benefits for some portion of that time. However, although Amazon furnished some medical treatment during that interval, no medical records show he was taken off work. Therefore, he does not appear likely to prove entitlement to disability benefits for that period at this time.

Dr. McNamara's office note from the September 7 visit says that Mr. Burris "will be off work status at this point." When Mr. Burris returned to Dr. McNamara on December 14, the doctor recommended an MRI to determine whether he was a surgical candidate. He also filled out a workers' compensation report that said Mr. Burris was off work until "return appt" after the MRI. Because the claim was denied, Mr. Burris never had the MRI or the return appointment, but he said in his deposition that he began work at a new job on February 13, 2023. Therefore, he appears likely to prove he is entitled to temporary total disability benefits of $466.67 per week[2] from September 7, 2022, through February 12, 2023.

Since returning to work, Mr. Burris said he is making less than his Amazon wages, but he offered no proof of medical restrictions or details as to the wage disparity. Therefore, the Court cannot find he is likely to prove entitlement to temporary partial disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Amazon shall furnish medical treatment made reasonably necessary by Mr. Burris's January 19, 2022 injury under Tennessee Code Annotated section 50-6-204. Dr. McNamara shall be the authorized treating physician.

---

[2] Mr. Burris testified that he earned $17.50 per hour and worked forty hours per week at Amazon. This approximates an average weekly wage of $700.00 and a compensation rate of $466.67.

2.  Amazon shall pay Mr. Burris temporary total disability benefits of $10,600.08 for the period of September 7, 2022, through February 12, 2023.

3.  A status hearing will take place on **March 13, 2024, at 9:30 a.m. Central Time.** The parties must call 615-532-9552 or toll-free at 866-943-0025 to participate. Failure to call might result in a determination of issues without your participation.

4.  Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit confirmation within seven business days may result in a penalty assessment for non-compliance. For questions regarding compliance, contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED December 8, 2023.**

**DALE TIPPS, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1.  Affidavit of Stuart Burris
2.  Rule 72 Declaration of Colleen Giller
3.  Rule 72 Declaration of Jennifer Talib
4.  Deposition transcript of Dr. James Fish
5.  Indexed medical records
6.  Deposition transcript of Dr. Michael McNamara
7.  August 8, 2022 Choice of Physician Form
8.  October 20, 2022 Notice of Change or Termination of Benefits
9.  December 8, 2022 correspondence between Amazon's counsel and Dr. McNamara
10. March 28, 2023 correspondence between Amazon's counsel and Dr. McNamara
11. Record review report of Dr. Tarek Elalayli
12. Deposition transcript of Stuart Burris

Technical record:
1. Petitions for Benefit Determination
2. Dispute Certification Notices
3. Requests for Expedited Hearing
4. WWL's Motion for Consolidation
5. Order consolidating claims
6. Joint Motion to Reduce time for Plaintiff to Respond to Discovery
7. Amazon's Motion for Continuance
8. Order denying continuance
9. Motion to Compel Exam
10. Response in Opposition to Compel Exam
11. Order compelling exam
12. Employers' Witness Lists
13. Employers' Exhibit Lists
14. Amazon's Pre-Hearing Brief
15. WWL's Position Statement
16. Mr. Burris's Motion for Continuance
17. Order denying continuance

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on December 8, 2023.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Stuart Burris, Employee | X | | X | 1635 Dodd Trail Murfreesboro, TN 37128 1767wildcat@gmail.com |
| Adam Brock-Dagnan, Attorney for Amazon | | | X | acbrock-dagnan@mijs.com |
| Eric Shen, Attorney for WWL | | | X | eric.shen@libertymutual.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

  If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*